HENRY RICE, ADMINISTRATOR OF THE ESTATE OF JOHN KITTLEMAN, DECEASED, *v.* JAMES CUNNINGHAM *et als.*

NEW TRIAL WHEN EVIDENCE IS CONFLICTING.—The Supreme Court will not disturb the verdict if the evidence was conflicting, even though the Judge who passed on the motion for a new trial did not preside at the trial, and for that reason declined to review the evidence.

WHAT CONSTITUTES A CONFLICT IN EVIDENCE.—The Supreme Court always reviews the evidence, if the point is made that the verdict is contrary to the evidence, and if they find there is a substantial conflict in the same, so that the jury might find either way, without becoming obnoxious to the charge of passion, prejudice, misconception, or caprice, the verdict will not be disturbed.

RECORD OF AN ALCALDE'S GRANT AS EVIDENCE.—One who introduces and reads in evidence the record of a grant of a lot in the record book of original grants made by an Alcalde in San Francisco prior to the establishment of civil government in California, may also be required to exhibit to the jury whatever words are found in the margin of the record showing that the grant was not taken, and the cross lines on the same, if there are any.

INTRODUCTION OF EVIDENCE OUT OF ITS ORDER.—The bare fact that evidence is brought to the notice of the jury out of its regular order, is no ground for a new trial, if the evidence would have been competent in any stage of the trial.

EVIDENCE ON ALCALDE'S GRANTS.—If the party to an action relies upon the record of a grant in the record book of Alcaldes' original grants to prove his title to a lot in San Francisco, and claims that entries on the margin of the record, and cross lines of cancellation on the same, were placed there after the grant was made, to defraud him, it may be shown that the municipal fees for the grant were never paid, and that the grant was never delivered; also, the circumstances under which the grant was made, and by whom and under what circumstances it was cancelled on the record, may be shown.

STATEMENTS OF A DECEASED PERSON—EVIDENCE OF.—The statements of one who claims a lot of land, made to a stranger, after it has been taken possession of by one who claims adversely to him, are not admissible in evidence in favor of his heirs in an action brought by them to recover possession of the same.

RIGHT TO GIVE EVIDENCE OF FORMER STATEMENTS MADE BY A WITNESS.—The former statements of one who is a witness on a trial, cannot be given in evidence by the opposite party, except for the purpose of impeachment, and then not unless the witness was questioned as to such former statements made by him.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

This action was brought to recover possession of a fifty vara lot on the northeast corner of Bush and Montgomery streets, in the City of San Francisco.

The plaintiff claimed that the intestate, John Kittleman, owned the lot under an Alcalde's grant issued to him by

George Hyde, Alcalde of San Francisco in 1846. He asserted that the original grant delivered to Kittleman had been lost, and to prove its issuance, introduced in evidence the book of original grants of Alcaldes in San Francisco. On pages two hundred and thirty-seven and two hundred and thirty-eight of this book, were a form of petition of Kittleman for a grant of the lot, dated December 26th, 1848, with Kittleman's name appended, with a space left for a cross, and the words, " his mark," in the form usually adopted when the party cannot write, and signs by making his mark, but there was no cross or mark—and a grant, signed by the Alcalde. Cross lines, apparently cancelling the record, had been drawn over both the petition and grant, and on the margin, opposite each, were the words " not taken." The Court below required the plaintiffs to read to the jury as a part of the record, the said words in the margin, and also to exhibit to them the cross lines.

The defendants called as a witness George Hyde, the Alcalde whó made the entries on the Alcalde's books, for the purpose of proving how the entries came to be made.

He testified that from December 15th, 1846, to January 20th, 1847, he was Alcalde *ad interim*, during the absence of Mr. Bartlett, the regular Alcalde, and that being desirous of securing for himself the lot in dispute, he requested John Kittleman to take out a grant for him. That Kittleman consented, and he then drew out a petition and signed Kittleman's name to it, leaving a blank space for his mark, as Kittleman could not write, and also drew out a grant to Kittleman of the lot without signing it, and placed both in the drawer of his table, and told his clerk not to record them. That, soon after, he concluded not to take the lot, and asked Kittleman to take it, but he refused, and about this time he discovered that his clerk had recorded both the petition and grant.

The witness was then asked what had been said and done between himself and Bartlett, after Bartlett's return, in relation to this grant and petition, and the record of them on the Alcalde's books.

The defendants objected to the question, and the Court overruled the objection.

The witness then testified that Bartlett and himself talked the matter over, and that he destroyed the original petition and grant, and Bartlett wrote the words "not taken" on the margin of the record, and drew the cross lines over the same.

The defendants called as witnesses Thomas Kittleman and Sarah Jones, two of the children of the intestate.

Plaintiff called witnesses for the purpose of proving that the two had, at a former time, made statements in conflict with their testimony. The Court excluded the testimony because the witnesses had not been interrogated on the subject.

The defendants recovered judgment in the Court below, and the plaintiff appealed.

*James C. Carey*, and *Edward Tompkins*, for Appellant.

*S. M. Wilson*, and *Delos Lake*, for Respondents.


By the Court, SANDERSON, J.

We are first asked to grant a new trial in this case upon the broad ground that the verdict is contrary to the evidence. Counsel admit that the evidence is conflicting, and acknowledge the force of the uniform rule of this Court not to disturb the verdict in such cases; but they claim that this is an exceptional case, and therefore ought not to be subjected to the operation of that rule.

### *New trial because the verdict is against evidence.*

The foundation upon which this claim is based is the fact that the motion for a new trial was not passed upon by the same Judge who presided at the trial, and that he declined to review the evidence for the reason that "he did not preside at the trial, and had not therefore seen the witnesses and had an opportunity to judge of their credibility from their appearance on the stand;" and it is argued with much force that

under these circumstances the appellant will be deprived of a substantial right, secured to him by the law of the land, unless this Court assumes to a certain extent *nisi prius* functions, and examines, as an original question, the sufficiency of the evidence in this case and applies to it the more liberal tests of a *nisi prius* Court.

That a party has the legal right to have the testimony in his case reviewed by the Court below, under the rules of law applicable to such a proceeding, for the purpose of determining whether the verdict ought to be allowed to stand, cannot be denied; but upon what principle can it be claimed that if the lower Court should fail to so review the testimony, the functions of this Court would thereby become enlarged? Certainly in such a case the reason upon which the rule of this Court is founded is not made less cogent or persuasive by reason of the supposed dereliction of the Court below. We decline to decide between conflicting evidence because we are cut off from the only means through which a decision can be intelligently reached in such cases. If the weight of evidence was to be determined solely by a count of the witnesses, and the greater weight accorded to the greater number, the reason upon which our rule is founded would be overcome, but we know of no other mode by which that result could be accomplished. If then the appellant has suffered any wrong in the respect named, we are unable to see how we can afford a remedy. From the very nature of the question we must solve it upon the same principles upon which like questions are solved in other cases; we can make no distinction in favor of the present case because it is impossible that a distinction can be made.

In this connection it is proper to remark that the expression, which has become very common, that this Court will not look into the evidence, if it is conflicting, for the purpose of determining whether the verdict ought to stand, is not very exact. On the contrary we always do look into the evidence whenever the point is made; but if, upon a careful examination, it appears that there is a substantial conflict, in view of which,

as presented to us, the jury might find either way without becoming obnoxious to the charge of passion, prejudice, misconception or caprice, we do not disturb the verdict, although we might if sitting as a jury find a different verdict; and we do this because we are cut off from those important aids to the attainment of a correct conclusion which the jury and the Court below find in the appearance and general bearing of the witnesses. The rule in question is applied only where there is a real and substantial conflict upon material points, and has no application where the conflict is more apparent than real or does not relate to controlling issues.

To analyze the evidence in this case and discuss its relative credibility and weight would consume time and space without profit. After a careful examination of the evidence, in which we have been most materially aided by the exhaustive analysis of counsel upon both sides, we are fully satisfied that this is eminently a case where the verdict ought not to be disturbed upon the ground alleged. It is sufficient to say generally, that whether we look to the evidence bearing directly upon the question as to whether there ever was a grant made and delivered to Kittleman, or to more remote facts and circumstances brought into the case in support of the principal proposition, we alike find a real and substantial conflict extending over the entire field. Numbers, it is true, appear to be on the side of the plaintiff in that part of the field where the principal issue is contested, but the more perfect and satisfactory knowledge of the disputed facts, supported by cotemporaneous record evidence, constituting (not to drop the figure) the heavier artillery, seem to be with the other side; while in that part of the field where the minor and auxiliary issues are contested the forces of the plaintiff seem to be completely flanked by those of the defendants. Such being the case, we cannot say that the umpires mutually chosen by the contesting parties have awarded the victory to the wrong side.

We now proceed to notice such exceptions taken at the trial as counsel for appellant have not abandoned. There are

many exceptions contained in the record, but they are reducible into a few general propositions.

I.  As to " Record Book A of Original Grants."

*Alcaldes' book of original grants as evidence.*

We think the ruling of the Court requiring the plaintiff to read the words " not taken," found in the margin of the record of the alleged Alcalde grant from Hyde to Kittleman, and to exhibit the cross lines of cancellation to the jury, if he used the book at all as evidence in the case, was right.  The argument of counsel for the appellant in support of their exception is grounded upon a false assumption.  They lower " Book A" to the level of a chance copy book, and strip it of all its character and dignity as a public record of the transactions of a Government official vested with the exercise of most important functions, and then seek to use it upon a question not then before the Court.  If the former could be done, if " Book A of Original Grants " could be regarded as a mere chance copy book of some private individual who, for his amusement or private convenience, had copied therein the grant in question, the point made here might be sustained had a question as to the contents of the grant been pending before the Court. In such a case upon proof that the grant had been in fact made and afterwards lost, and upon further proof to the effect that the copy in the book was in fact a copy of such grant, the book might be received for the purpose of proving the contents of the grant.  But that is far from being the case.  Here the plaintiff, without attempting to show that a grant to Kittleman was ever in fact made, commences by proving that no such grant can be found after a diligent and thorough search in every place where such a grant, if it ever existed, would most likely be found (thereby showing, thus far at least, that in all probability no such grant was ever made), and then offers the book in question in evidence.  For what purpose? It is answered, " for the purpose of proving the contents of our grant."  The reply is obvious:  You have not yet shown

63

that you ever had a grant, and until that has been done there can be no question about its contents. Hence, at this stage of the case, it was not receivable even in its assumed character for the purpose of proving the contents of a lost grant; on the contrary, it could have been received only in its real character of an official record as secondary evidence of the grant itself, showing that it had in fact been made, which was the real question in issue. Such being the case, there can be no doubt but that the ruling of the Court was correct. While "Book A" showed that a grant in form had been made out, it also showed that it had been cancelled and never delivered to the grantee. Before a witness is allowed to take the stand he is sworn to tell, not the truth merely, but the whole of it, and we know of no exception to this rule in favor of record or documentary evidence.

This is not, as counsel seem to argue, the case of an altered or mutilated record. The words "not taken" and the cross lines of cancellation are a part of the record itself, and not an alteration or mutilation of it. At least they must be presumed to be so until the contrary appears, for such was the usual and ordinary official mode of cancelling a grant which from any cause had never been "taken out" or delivered, and, therefore, notwithstanding its apparent validity, null and void.

Under the thirty-seventh section of the Act concerning conveyances a mortgage may be discharged by an entry to that effect in the margin of the record signed by the mortgagee, or his personal representative or assignee, as the case may be. Suppose suit is brought upon a lost mortgage, and the record from the Recorder's office, with the discharge in the margin, is offered as secondary evidence of the existence of the mortgage, would not the entire record have to go to the jury, including the discharge? Such discharge, in the regular and legal course of business in the Recorder's office, has become a part of the record and must remain so for all purposes. The presumption of law is, that the discharge has been regularly and honestly entered, and if fraud is alleged it cannot be presumed but must be shown. If so, the same rule, in view of

the testimony as to the custom and usage of Alcaldes in respect to the cancellation of grants, would be applicable to the present case.

But admitting, for the sake of argument, that the Court erred in the particular under consideration, it was not such an error as would justify us in reversing the judgment. In view of the testimony of Hyde and Bartlett, and perhaps others, as to the mode of transacting business adopted by them and other Alcaldes, and particularly the practice of entering grants in " Book A" and subsequently cancelling them in case the municipal fees were not paid or if from any cause the grant was " not taken out," it cannot be said but that the words " not taken " and the cross lines were competent evidence for the defendants upon the main question whether a grant had ever in fact been made. Such being the case, it follows that no improper evidence was allowed to go to the jury, and the bare circumstance that by the ruling of the Court evidence was brought to the notice of the jury out of its regular order is no ground for a new trial.

*Evidence of an Alcalde explaining entries on his book.*

II. The exceptions to the testimony of Hyde as to what was said and done by himself and Bartlett in relation to the cancellation of the record in " Book A" are based upon the ground that Kittleman was not present, and the further ground that the acts and sayings of Hyde and Bartlett subsequent to the delivery of the alleged grant to Kittleman could not operate to defeat his rights thereby acquired.

If we assume that a grant was actually made and delivered to Kittleman on the 28th of December, 1846, and that the title to Lot 254 vested in him on that day, and that the defendants were attempting by the evidence in question to show a subsequent divesture, we should undoubtedly be compelled to hold that these exceptions are well taken ; but that would be assuming the very point in controversy to disprove which the evidence under consideration, in connection with other evidence already given by Hyde, was offered by the defendants.

We must not forget that there was substantially but one question involved in this case, and that was as to whether Hyde had ever made and delivered to Kittleman a grant of Lot 254. For the purpose of proving the affirmative, the plaintiff, in connection with other testimony, relied upon the record in "Book A," but in the same breath claiming that the words "not taken" and the cross lines there found were a fraud upon him, having been put there subsequent to the time when, as he alleges, the grant was issued and the title under it vested in Kittleman. To meet this evidence and charge of fraud, the defendants first show by Hyde that no grant was ever made by him to Kittleman, and then proceed to explain the alleged fraud by showing how the record in "Book A" came to be made, and how subsequently it came to be cancelled, the whole being used for the sole purpose of proving that no grant was in fact made and no fraud perpetrated, and we are unable to perceive why it was not competent for them to do so.

The resolution of the Common Council of San Francisco of March 26th, 1850, authorizing the Alcalde to procure a book into which all grants in Book A should be transcribed and certified by the Alcalde, and "Book No. 1 of Certified Grants," made in pursuance thereof, in which book all grants in said "Book A," purporting to have been cancelled in a manner similar to that shown on the record in said Book A, of the grant in question were omitted, was admissible as tending to show that as early as the making of said Book No. 1 the said marks of cancellation must have existed. While this testimony did not amount, to much, still we think it was admissible as corroborative of other testimony, to the effect that the cancellation was made prior to that date. Under the instructions of the Court, to the effect that if the title to the land ever vested in Kittleman under the alleged grant, it could not afterward be divested by a mere cancellation of the records of the Alcalde, the jury could not have misunderstood the effect which they were to give to Hyde's and Bartlett's testimony and that of "Book No. 1 of Certified Grants."

III. The statements of John Kittleman made to G. W.

Crane in 1850 or 1851, after the defendant Cunningham had entered upon the lot, as appears from the complaint, were properly excluded. We are unable to perceive upon what ground it can be claimed that Kittleman could at that period of time manufacture evidence for himself or his personal representative, the plaintiff in this case.

IV. The statements and acts of Thomas Kittleman and Mrs. Jones were also properly excluded. Had Thomas Kittleman and Mrs. Jones not been examined by the defendants, there could be no pretense that their acts or sayings could be admitted as evidence. Such being the case, they could only be used for the single purpose of impeachment. For that purpose the former acts and statements of a witness may be given in evidence, but the way must be prepared by a previous examination of the witness himself as to such acts and statements, which was not done in this case. (1 Greenleaf Evidence, Sec. 462.)

We do not think the charge of the Judge is obnoxious to the objections and criticisms of counsel.

Judgment affirmed.


SAWYER, J., concurring.

This cause was tried before me while Judge of the Twelfth Judicial District; and not by the District Judge who denied the new trial. When the motion for new trial came up for argument, the counsel for the plaintiff stated that he expected to obtain a new trial, on the ground that the verdict was against the evidence, at the same time admitting that the evidence upon which the verdict of the jury was rendered was conflicting, but claiming that the weight of evidence was in his favor. Thereupon the Judge intimated to counsel that inasmuch as he did not preside at the trial, and did not see the witnesses, or have any knowledge as to their appearance on the stand, he should not feel at liberty to disturb the verdict of the jury unless some error of law had been committed.

Upon such intimation, " the counsel for the plaintiff deemed
it best to submit the cause without argument, and the motion
for a new trial was accordingly denied." Counsel seem to
have acquiesced in this action of the Court, and do not appear
to have insisted that the Judge should examine the testimony,
or to have excepted to the course pursued. They cannot
now, for the first time, insist that the action of the Judge in
intimating that he would not weigh the conflicting evidence
was error.

But the peculiar circumstances of the case are urged as
reasons why this Court should not confine itself to the narrow
limits recognized by its well established rule as to balancing
conflicting testimony, especially since one of its Judges pre-
sided at the trial in the District Court, and, therefore, is pos-
sessed of those aids which were wanting to the Judge who
denied a new trial.

In view of these suggestions I deem it proper, without
attempting a discussion of the evidence, to briefly state the
conclusion to. which my mind is led. There had been one
trial and counsel entered upon the final contest thoroughly
prepared on every point. The interest manifested by counsel
was worthy the magnitude of the stake, and the cause was
tried on both sides with consummate ability. If the full
strength of the case was not then presented there is little hope
that it ever will be brought out. I listened to the entire
evidence with unusual interest, and followed closely the
elaborate and eloquent arguments of counsel before the jury,
where the testimony was subjected to a masterly and thor-
oughly exhaustive analysis, and its weight, credibility and
bearing were fully discussed. I have again, long since the
excitement of the trial has passed away, read with care the
entire evidence in the transcript, and the one hundred and
sixty printed pages of briefs of counsel, in which the argu-
ment is again absolutely exhausted. When the verdict was
rendered I was strongly impressed with the idea that it was
justified by the evidence. And now, on a more careful review,
after comparing and balancing the conflicting testimony, and

applying to it, so far as I am able, all the known logical and legal tests, with a view of determining its credibility, and giving to each portion its due weight, I am still not only satisfied that the testimony is such that I should not, upon the most liberal view which could be taken, feel at liberty, if sitting as District Judge, to disturb the verdict, but also, if submitted to me upon the same evidence as an original question, I should feel compelled to find that the grant was never delivered to Kittleman—that the document made out never became a grant.    The verdict therefore, in my opinion, is fully sustained by the evidence.

Upon the questions of law raised by appellants, I also concur in the opinion delivered by Mr. Justice Sanderson.


RHODES, J., dissenting.

I dissent from the judgment on the ground that the instruction of the Court in respect to the presumption arising from the lines of cancellation drawn across the record, and the words " not taken " written upon the margin of it, is, in my opinion, erroneous.


CURREY, C. J., also dissenting.

I am of the opinion the judgment of the Court below should be reversed for the cause assigned by Mr. Justice Rhodes for his dissent from the judgment of affirmance.