[L. A. No. 1467.    Department One.—January 16, 1906.]

## RIVERSIDE HEIGHTS WATER COMPANY et al., Plaintiffs, v. RIVERSIDE TRUST COMPANY, LIMITED, Appellant, and EAST RIVERSIDE WATER COMPANY, Cross-Complainant and Respondent.

CANAL FOR IRRIGATION—PROPORTION OF EXPENSES—ORIGINAL CANAL—EXTENSION—SUPPORT OF FINDING.—Upon review of the evidence upon an issue joined between appellant and respondent as to the amount or proportion of expenses to be paid to appellant by respondent for the maintenance of a canal for irrigation managed and controlled by appellant, *held,* that the evidence sustains the finding that such proportion was limited to the canal as originally contracted for and constructed by appellant's grantor to a certain arroyo, and did not include liability for any proportion of expense upon a subsequent extension of the canal by him.

ID.—AMBIGUITY IN CONTRACT—IDENTITY OF CANAL—EXPLANATORY EVIDENCE.—Where the language of some of the contracts assigned to respondent was uncertain in respect to the identity of the canal to be constructed by appellant's grantor, it was proper to admit evidence of the circumstances surrounding the parties at the time, the size and length of the canal then made or contemplated by him, and of the physical character of things mentioned in the contracts, as well as the names by which they were then generally known.

ID.—LIABILITY OF PARTIES SERVED BY EXTENSION—SHARE OF EXPENSES.—If the parties served by the extension, or the appellant, as their successor, acquired any right in the original canal for conveyance of water along the extension, they or appellant would be bound to contribute such just proportion of the expenses of maintaining the original canal as the water carried therein to serve those obtaining water on the extension bears to the whole amount of water flowing in the original canal.

ID.—RESERVATION OF WATER TO BE DEVELOPED — USE OF CANAL — EX-PENSES.—Where appellant's grantor reserved the right to develop water by artesian wells, to be carried in the canal for use upon his own or other lands, for the conveyance of such water, a propor-tionate share of the expense of maintenance of the canal must be paid by him or his grantee.

ID.—PAYMENTS BY RESPONDENT — ESTOPPEL — CONDUCT OF PARTIES — CONFLICTING EVIDENCE.—The fact that payments were made by respondent which it was not obligated to make cannot operate as an estoppel upon it where there are no circumstances from which an estoppel can arise. The conduct of the parties, though admissible, is not conclusive evidence, and may be disregarded in favor of more satisfactory evidence to the contrary; and with the conclusion of the lower court on conflicting evidence this court cannot interfere.

ID.—CONSTRUCTION OF JUDGMENT—BASIS OF APPORTIONMENT—FLOW OF WATER—WASTE.—The judgment fixing the apportionment of the expenses on the basis of the amount of water flowing in the canal is not unjust because not based upon the use. The amount of the water at the head of the canal for use below is to be taken as the amount flowing therein; and whatever loss occurs by evapora-tion or otherwise will be divided among the parties according to their interests. The judgment cannot be interpreted to justify any misconduct in unnecessary waste, the loss for which must be wholly borne by the party causing it.

ID.—CONSTRUCTION OF CONTRACTS—ERROR FAVORABLE TO APPELLANT.—Where a few of the contracts held by appellant were grants by the grantor of water-rights in the canal for a valuable consideration, but containing no covenant by the vendee to pay any part of the operating expenses, if it cannot be held liable for expenses of operation, a judgment too favorable to appellant in requiring pay-ment on its behalf cannot be complained of by appellant.

ID.—CROSS-COMPLAINT—ANSWER—STIPULATION FOR TRIAL OF ISSUE—WAIVER OF OBJECTION. — Where appellant appeared to a cross-complaint, demurred and answered thereto, and stipulated to submit for decision a particular question arising upon the cross-complaint and answer, it cannot be objected upon appeal for the first time that the cross-complaint was improperly filed. The court had juris-diction of the subject-matter, and by the appearance had personal jurisdiction of the parties; and all other objections to the manner in which the issue was brought before the court were waived by the conduct of the parties.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. John. L. Campbell, Judge.

The facts are stated in the opinion of the court.

M. B. Kellogg, and Fox, Kellogg & King, for Appellant.

Collier & Carnahan, and Collier & Evans, for Respondent.

SHAW, J.—The record presents appeals by the defendant Riverside Trust Company, Limited, from the judgment and from an order denying its motion for a new trial. The only parties to the appeal are the said Riverside Trust Company, Limited, and East Riverside Water Company, both of which corporations were made defendants to the original action. The East Riverside Water Company filed a cross-complaint, which was answered separately by the Riverside Trust Company, Limited. Upon the trial it was stipulated that the court should hear and determine but one question, a question involving only the respective rights of the two last-named corporations. The other parties to the action are not interested in this appeal. The court was asked to determine the amount which the East Riverside Water Company should pay as its proportion of the expenses of maintenance and taxes of a canal managed and controlled by the Riverside Trust Company. For the sake of brevity, the East Riverside Water Company is hereinafter designated as the "Water Company" and the Riverside Trust Company, Limited, as the "Trust Company."

In order to give a clear understanding of the issue and the questions arising thereon, it is necessary to state the history of the case as disclosed in the evidence. In the year 1884 Matthew Gage was the owner of section 30, township 2 south, range 4 west, San Bernardino base and meridian, which lay adjacent to and immediately north of a large ravine known as the "Arroyo Tequesquite," and near the colony which afterwards became the city of Riverside. This land was in need of water for irrigation in order to make it productive. He also owned a supply of water situated some twelve or fifteen miles northerly of the aforesaid section, in the valley of the Santa Ana River. A large body of land, also in need of water for irrigation, lay between the aforesaid section and the location of the said water supply. In this condition of affairs Gage conceived the plan of constructing from the water supply to his land a canal of sufficient capacity to carry water for the irrigation of his own land

and a large part of the other land of a lower elevation than the line of the proposed canal, and of securing the co-operation and assistance of the owners of such other lands in the building and maintenance of said canal. In pursuance of this plan he made a preliminary survey of the route of the canal from the water supply to the south line of section 30 aforesaid, which bordered upon or close to the said arroyo, and during the years 1884, 1885, and 1886 he made separate contracts with a considerable number of the owners of land lying along the line of the proposed canal. These contracts were of similar form, though varying in some of the details. In general, they contained an agreement upon the part of Gage to build the canal and to deliver therein water for the irrigation of the particular tract of land at the rate of one inch continuous flow under four-inch pressure for each five acres of the land, and an agreement on the part of the landowner that after the completion of the canal and the delivery of the water therein he would pay the expense of maintaining and repairing the canal in the same proportion as the amount of water to which he was entitled under the contract would bear to the whole amount of water flowing in the canal. This canal was completed from the source of supply down to the Arroyo Tequesquite some time in the year 1886, and from that time forward water was delivered therein to the several parties who had contracted therefor. About that time the East Riverside Water Company was incorporated, and subsequently, by contract with some of these adjoining landowners, it became a trustee of such owners for the purpose of receiving from the canal the water to which such owners were entitled, making distribution thereof through side canals to such landowners, according to their respective interests and rights in and to the water, and paying to the person in the control and management of the canal the proportion of the expenses of maintaining and repairing the same which should be justly due from such owners by virtue of the contracts aforesaid. Some two years or more after the completion of this canal as thus laid out, Gage made an addition to the canal by extending the same from its terminus on the north bank of the Arroyo Tequesquite, across said arroyo

southerly for some ten miles, and thereafter used the original canal and this extension as a conduit to carry water from said source of supply to and upon a large body of other lands several miles below the original terminal point. On March 11, 1890, Gage sold and conveyed to the Trust Company all his rights and interests in the entire canal, including the extension, and in and under the various contracts with the respective landowners along the original canal. It does not appear to be expressly alleged anywhere, but it seems to be true, and it is practically admitted by both parties, that Gage, while he held it, and the Trust Company thereafter, had the control and management of the canal and of the running of the water therein, and paid, in the first instance, all expenses, taxes, and repairs thereon, collecting from the other parties their due proportion, according to the terms of the contracts. The cross-complaint alleges in general terms the inception of the enterprise and the original plan of building the canal down to the Arroyo Tequesquite, the terms of the contracts between Gage and the other landowners, the subsequent arrangement by which the Water Company became the agent and trustee for a large number of the owners for the purpose of receiving and distributing the water to which they were entitled, and paying the charges for repairs and maintenance on account thereof, the transfer by Gage to the Trust Company, and that the Trust Company claimed of the Water Company, as its proportion of the expenses, a large sum, more than was actually due under the contracts represented by the Water Company, and that upon this point the parties could not agree, and among other things, asked the court to adjudge and determine the amount and proportion of such expenses that should be paid by the Water Company to the Trust Company. The cause of this dispute was a claim on the part of the Trust Company that the persons making the original contracts with Gage, and represented by the Water Company, were by the original contracts bound to contribute to the payment of the expenses of the extension of the canal below the Arroyo Tequesquite. In other words, that the said extension was a part of the canal referred to in the respective contracts of the other parties, and the expense of which they thereby

bound themselves to pay in proportion to their interests in the water. The Water Company, on the other hand, contended that the contracts of the parties whom it represented did not refer at all to the extension of the canal below the Arroyo Tequesquite, but contemplated only the building of the canal down to that point, and the contribution on the part of each landowner of his proportionate part of the expenses of this original canal. It further contended that the persons obtaining water through the subsequent extension of the canal were not only bound to pay all expenses of operating the extension, but were also bound to pay their due proportion of the maintenance of the original canal in the same manner as the other landowners; that is, in such proportion as the water taken by them bore to the whole amount of water flowing in the original canal. As before stated, upon the trial all other issues were eliminated, and it was agreed that this was to be the sole question submitted to and decided by the court.

The court made findings covering the allegations of the cross-complaint, and, among other things, found specifically that the Water Company received from the Trust Company through said canal, and distributed and was entitled to receive and distribute, 718.3 inches of water, which was appurtenant to and was distributed for the irrigation of 3,591.50 acres of land, all of which was situated above the said arroyo, except a small portion thereof which, although situated below the arroyo, received its water from a reservoir supplied by a side ditch leading out of said canal above the arroyo. The following paragraphs of the findings show more particularly the facts upon which the rights of the parties depend:—

"(8) That the Gage canal, as originally contemplated and constructed by Matthew Gage, . . . extended from the north bank of the Tequesquite Arroyo in a northerly direction through the county of Riverside to the water sources supplying the said canal. . . .

"(9) That said canal was so constructed in the year 1886, and preceding years, and was completed to the north bank of said Tequesquite Arroyo in 1886.

"(10) That in the years 1888 and 1889 an extension of said canal was constructed by Matthew Gage, extending from

the north bank of the Tequesquite Arroyo in a southerly direction a distance of about ten miles.

"(11) That the canal mentioned in and referred to in each and every of said contracts set out and mentioned in the schedule hereinabove given, and in all other deeds and contracts in evidence relating to the same water-rights, and which contracted or conveyed said 718.3 inches of water, was and is the said canal extending from the north bank of the Tequesquite Arroyo northerly through Riverside and San Bernardino counties to the water sources of said canal.

"(12) That by the said contracts and deeds the parties securing said 718.3 inches of water from said canal, and their successors in interest, agreed with Matthew Gage and his successor in interest, the Riverside Trust Company, Limited, to pay their proportionate share of the taxes and expenses of operating said canal as constructed from the north bank of the Tequesquite Arroyo to the water sources in San Bernardino County. . . .

"(14) That the defendant Water Company is not liable to defendant Trust Company under the contracts, deeds or agreements, or any of them, by which such 718.3 inches of water as it distributes is held, for any part or portion of the taxes or operating expenses of said canal as constructed southerly from the north bank of the Tequesquite Arroyo.

"(15) That by the contracts, deeds, and agreements, and each of them, under which said 718.3 inches of water is held and distributed, the Water Company is obligated to pay, and should pay, to the Trust Company such proportion of said taxes and expenses of operating said canal, as constructed northerly from the north bank of said arroyo, as the said 718.3 inches of water, so distributed by the Water Company, bears to the whole number of inches of water flowing through that portion of the said canal north of the north bank of said arroyo, whether intended for use either above or below the north bank of said arroyo." The conclusion of law and judgment was to the same effect.

The appellant questions the sufficiency of the evidence to support these findings. A determination of this question requires a construction of the various contracts with the parties now represented by the Water Company. These con-

tracts, though similar in form, and all made apparently for the same purpose and object, do not all express the purposes in the same language. Each one of them is more or less indefinite in the description of the canal to the expense of operating which the particular purchaser of water agreed to contribute. In five of them, executed in 1884 and 1885, the agreement of Gage is said to be to "construct a canal from a point on the Arroyo Tequesquite in sec. 31 Tp. 2, S. R. 4, W. S. B. M. to the west boundary of J. A. Carit, according to a survey by C. C. Miller." Other two described the canal to be built by him as extending "from a point on the Santa Ana River to the mesa land on the east of the colony of Riverside." Some twenty, executed in 1886 and 1887, declare that Gage thereby sells and conveys "a water-right in the Gage canal system," and two others omit the word "system" from this form of description. The evidence shows that at the time these several contracts were made the canal then known as the Gage canal extended, or was proposed to be constructed, only from the source of supply on the Santa Ana River southerly to the said arroyo, and that at that time no further extension had been made, nor was it then generally known or understood that any extension was to be made or was in contemplation. Many of them were made before the canal was made or begun. For the purpose of aiding in the interpretation of the contracts, and showing what canal was intended by the several descriptions thereof, the court admitted evidence to the effect that the phrase "mesa lands to the east of the colony of Riverside" was understood in that locality at the time these several contracts were executed to embrace only the lands lying northerly of the said Arroyo Tequesquite and easterly of the lands then known as the colony of Riverside, and now constituting the city of Riverside, and extending between said colony and the foothills, northerly a distance of several miles towards the Santa Ana River, from which the water in question was obtained; that this tract was not theretofore supplied with water; that the Arroyo Tequesquite was a very large ravine, from one hundred to one hundred and fifty feet deep, and eight hundred to one thousand feet across; that in the various negotiations between Gage and the respective parties entering

into these contracts, the canal referred to by him, and which he then proposed to build, or was building, was the canal extending from the place of supply down to the said arroyo; that Gage at that time owned section 30, all of which was north of said arroyo; that one of his purposes in building said canal was to obtain water with which to irrigate the said tract of land; and that there was no intimation by him that he expected, intended, or desired to extend the canal below the said arroyo. This testimony was properly admitted for the purpose for which it was offered. The language of the contracts being uncertain in respect to the identity of the canal to be constructed by Gage, it was proper to admit evidence of the circumstances surrounding the parties at the time, the size and length of the canal then made or contemplated by him, and of the physical character of things mentioned in the contract, as well as the names by which they were then generally known. The objections of the appellant to this evidence were properly overruled.

We are of the opinion, also, that in view of the evidence, and of the language of the contracts, the court was justified in finding, as it did, that the canal contemplated by the said contracts, and to the expense of operating which the parties thereto agreed thereby to contribute, was the original canal extending from the Santa Ana River to the north bank of the Arroyo Tequesquite, and that they did not agree thereby to contribute anything to the expenses of the subsequent extension of the canal below that point. In addition to the evidence above mentioned, it was shown that the contract of Gage with Townsend in September, 1886, for building a canal, described it as a canal "to commence at the Santa Ana River at the flume on Orange Grove Homestead, and end on the north bank of the Tesquesquite Arroyo in section 31"; that in 1890, after the extension had been made, or at least begun, and prior to his conveyance to the Trust Company, Gage made several agreements with landowners who held contracts made in 1884 and 1885, explaining and modifying the previous contracts, and that each of said explanatory agreements contained the following recital: "Whereas the said Matthew Gage is the owner of a canal known as the 'Gage Canal' constructed for irrigation and other purposes

from a point on the Santa Ana River to the mesa on the east of the colony of Riverside, and is now supplying ——— inches of water under'' the previous agreement. This, in connection with the other evidence, sufficiently shows the meaning of the contracts to be as found by the court.

The rights of the parties being thus fixed by the contracts at the time they were made, Gage could not add to the burdens of the other parties by extending the canal farther south so as to irrigate other lands and charging the other parties with the expenses of operating such extension. The parties served by such extension, if by their agreements they acquired any rights in the original canal, would be to that extent tenants in common in the original canal, and as such would be bound to contribute their just share of the common expense of maintaining that canal. If they acquired no such right, and the right to use the original canal to carry the additional water to the extension was retained or acquired and held by Gage and the Trust Company as his successor, then the Trust Company would be to that extent a tenant in common in the original canal with the other persons having rights therein, and as such would be bound to contribute a just share of the common expense. This just share obviously is such proportion of the expense of the original canal as the water carried in that canal for the purpose of serving the use of those obtaining water from the extension bears to the whole amount of water of right flowing in the original canal. With respect to the expenses of the extension, the Trust Company would stand in the same position as that of each of the other common owners of the original canal with respect to the expense of his own particular canal or conduit; that is, each must bear the expenses of his own canal, and contribute in equal proportion to the common burden of maintaining the common canal. We do not see that there is anything unreasonable in this view of the rights of the respective parties.

Many of the contracts, especially the explanatory contracts of 1890, contain a clause as follows: ''The said Matthew Gage reserves the right to develop and procure by means of artesian wells and otherwise, water from the sources above mentioned and elsewhere, in addition to the said ———

inches aforesaid, and to convey the same in said canal for the use of his own and other lands.'' This provision is not inconsistent with the findings of the court, nor does it bind the parties to such contract to pay any part of the operating expenses of any side canal or extension of the original canal that he might find it necessary to make to carry such additional water from the original canal to the lands to be irrigated with the additional water developed by him. In view of the covenant in the same and other contracts, to the effect that ultimately, when the final development of the water obtainable from the sources of supply should be completed, the canal should ''be held in ownership by the owners of water supplied therefrom'' in the same proportion as their interest in the water, it was a proper reservation to make, although perhaps he would have had this right without a special reservation to that effect in the contract. It is clearly equitable and just that all persons having the right to use the original canal as a common conduit with others, whether they belong to the class whose rights were obtained prior to the extension, or whether they derive their right from the extension of the canal and the development of additional water by Gage, should each, directly or indirectly, pay his proper share of the expenses of the operation of such original canal.

It is claimed that the respondent, by making payments of the amounts claimed by the appellant and by other acts which are said to show a recognition of or acquiescence in the claim of an obligation so to do, has, by estoppel or otherwise, bound itself to a construction of the contracts in accordance with appellant's claims and contrary to the findings. We think this claim is untenable. There are no circumstances from which an estoppel could arise. And while in the case of an ambiguous contract the conduct of the parties may be proved to aid in its interpretation, yet it is not conclusive evidence thereof, and it may be disregarded in favor of more satisfactory evidence to the contrary. With the conclusion of the lower court on such conflicting evidence we cannot interfere.

Objection is made to the judgment on the ground that the proportion of expense for which the respondent is adjudged liable is, as to one of its terms, based on the amount of water

flowing in the canal, whereas it should have been upon the amount used. It is said that the flow is necessarily larger than the use because in the distribution of water for use to different persons receiving it at different points there must inevitably be some water wasted, and this will form part of the water flowing in the canal. If such waste is inevitable, then it is necessary to the use, and we can perceive no injustice in decreeing payment according to the flow thus made necessary, particularly as the incidental waste will be, so far as appears, in substantially the same proportion to each party. The judgment cannot be interpreted so as to justify a charge for or against either party for expenses caused by water carried through the canal by the other party and purposely or knowingly suffered to run to waste unnecessarily. For the expenses caused by such waste the party responsible therefor would be exclusively liable with respect to the other parties, notwithstanding anything that is said in the judgment. It does not purport to declare the rights or liabilities growing out of such misconduct. It is urged that the place of measurement of the water "flowing" in the canal is not fixed, and that, as there must be considerable loss by evaporation and seepage in the course of the passage of the water through its entire length to the respective places of delivery to the users, the judgment is for that reason uncertain. In answer to this it is to be said that the true meaning of the judgment is that the amount of water received in the canal at its head for use below, is to be taken as the amount "flowing" therein, for the purpose of adjusting the shares of the expense, and whatever necessary loss occurs in transmission by evaporation or otherwise will then be divided among the parties according to their interests. This is fair and just, and no more practicable method of adjusting such losses seems possible or desirable.

A few of the contracts purport to be grants by Gage of water-rights in the "Gage Canal" and to be made for valuable considerations, but contain no covenant by the vendee to pay any part of the operating expenses, or any agreement relating thereto; and it is contended that as to these the findings and judgment are erroneous. The vendee in such a case either becomes the owner of some common interest

in the canal which entitles him to carry, or have carried for him therein, the water for his use, and as such common owner, liable for his proper share of its operating expenses, or he becomes the owner of the right to receive water from the canal as an appurtenance to his land or otherwise, without further contribution to the expenses of operation than that made by the price he paid. In the former alternative the judgment is correct. In the latter it is too favorable to the appellant, in that it requires payment on behalf of these owners which they are under no obligation to make. But this does not injure the appellant, and it cannot complain.

The appellant appeared to the cross-complaint, filed a demurrer and answer thereto, and afterward went to trial, not only without objection to the propriety of the cross-complaint as a pleading in the action, but in pursuance of a stipulation to submit for decision a particular question arising out of its allegations. It is too late to object in this court for the first time that the cross-complaint was improperly filed and did not come within the scope of the provisions of section 442 of the Code of Civil Procedure. The court had jurisdiction of the subject-matter, and by the appearance obtained personal jurisdiction of the parties. All other objections to the manner in which the issue was brought before the court were waived by this conduct of the parties. (*Santa Barbara* v. *Eldred,* 95 Cal. 381, [30 Pac. 562]; *Hart* v. *Carnall Co.,* 101 Cal. 163, [35 Pac. 633]; 103 Cal. 140, [37 Pac. 196]; *De Jarnatt* v. *Marquez,* 132 Cal. 702, [64 Pac. 1090]; *Power* v. *Fairbanks,* 146 Cal. 611, 613, [80 Pac. 1075].)

Other objections are made by the appellant, but we do not consider them of sufficient importance to require special mention. They are without substantial merit.

The judgment and order are affirmed

'Angellotti, J., and McFarland, J., concurred.

Hearing in Bank denied.