[Civ. No. 1123.   Third Appellate District.—September 17, 1913.]

## T. F. DUNAWAY, Appellant, v. AUGUST ANDERSON et al., Defendants and Respondents; MADELINE LAND & IRRIGATION COMPANY (a Corporation), Defendant to Cross-complaint.

APPEAL—POWER TO REVIEW FINDINGS—SUFFICIENCY OF EVIDENCE.—The supreme court has the power to interfere with a finding that is supported by substantial evidence, or to set it aside when it appears "reasonably certain" that such finding or verdict is wrong, but it is in no position to exercise the power justly or to be assured that the finding or verdict is wrong where it is supported by substantial testimony that is not inherently improbable. This arises from the circumstance that the appellate court is deprived of those important aids to the attainment of a correct conclusion, which the jury and the court below find in the appearance and general bearing of the witnesses.

ID.—EXERCISE OF POWER BY APPELLATE COURT.—NATURE OF QUESTION INVOLVED.—The question is not one of the existence of the power or authority, but rather of the only feasible and practicable method of exercising that power.

ID.—NEW TRIAL—RELATIVE POSITIONS OF TRIAL AND APPELLATE COURTS. The situation of the trial judge in passing upon a motion for a new trial is different from that of the appellate court. The latter court cannot pass upon the credibility of witnesses, and hence cannot interfere upon this ground; the trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it.

CORPORATION—CONTRACT OF OFFICER—WHETHER BINDS HIM INDIVIDUALLY.—The evidence in this case justifies the finding that the plaintiff, in requesting the defendants to construct a dam, acted individually and not as the officer of a corporation, and that therefore he became personally liable to the defendants for the services performed by them. It is of no concern to him that the court also finds the corporation liable.

ID.—SUFFICIENCY OF EVIDENCE—SPECIFICATION OF ERROR—NEGATIVE PREGNANT.—It is doubtful whether the evidence is sufficient to support the finding that a canal and ditch were constructed at the instance and request of such officer, but he is in no position to urge a reversal on that ground, since his denial of the construction of the ditch and canal amounts to a negative pregnant, and the alleged isufficiency of evidence is not specifically indicated in his specifications of error.

APPEAL from an order of the Superior Court of Lassen County refusing a new trial. H. D. Burroughs, Judge.

The facts are stated in the opinion of the court.

James Glynn, and Pardee & Pardee, for Appellant.

R. M. Rankin, and Grover C. Julian, for Respondents.

BURNETT, J.—Defendants, August Anderson and Alfred J. Anderson, in addition to their answer to the complaint, filed a cross-complaint and were awarded judgment thereon against plaintiff and the Madeline Land and Irrigation Company (a corporation), the latter having been made a defendant in the cross-complaint, for the sum of $1,242. The appeal is by plaintiff from the order denying his motion for a new trial and he states, in his opening brief, that "the propositions we submit herein are (1) The insufficiency of the evidence to support the judgment and findings thereon against T. F. Dunaway, plaintiff and appellant herein, made a defendant with the Madeline Land and Irrigation Company, by the defendants and respondents herein, in the third cause of action by way of cross-complaint, and (2) That said findings therein are against law." The two propositions thus stated, however, simply amount to the contention that, as a matter of law, the evidence is insufficient to support the following findings of the court: "That between the 10th day of August, 1909, and the 15th day of November, 1909, the defendants August Anderson and Alfred J. Anderson, at the county of Lassen, state of California, performed labor and services in the erection and construction of a certain dam for the storage of water on the S. E. ¼ of S. E. ¼ of section 22, Tp. 36 N., R. 16 E., M. D. M. and in the construction of three miles of canal and ditch, at the special instance and request of the said plaintiff T. F. Dunaway, and the Madeline Land and Irrigation Company."

It is not disputed that the services were performed by said defendants and that they were worth the amount found by the court, but appellant insists that there is no warrant for the conclusion that *he* employed defendants, the contention being that their contract was solely with the said Madeline

Land and Irrigation Company and that his connection with the matter was simply as an officer of said corporation.

Appellant does not seem to appreciate fully the difference between the situation of an appellate court and that of the trial court in passing upon the merits of a motion for a new trial. He says: "The supreme court properly has the right under the constitution of the state of California to review questions of fact and thereunder examine evidence for the purpose of determining whether the court below erred in its finding." He cites as authority Hayne on New Trial and Appeal, page 1631 (revised ed.) wherein it is stated: "The implication of the constitution, therefore, is that in civil cases the supreme court shall review questions of fact as well as questions of law. But however this may be, the constitution certainly contains no *prohibition* upon the review of questions of fact. Nor is there anything in the statutes which prohibits the review of such questions." The learned author criticises the use of certain expressions implying the want of authority in the supreme court to review questions of fact, like the following: "The finding of the jury under the conflict is conclusive, and not subject to review here." (*Bundy* v. *Sierra etc. Lumber Co.,* 149 Cal. 772, [87 Pac. 622].) "The verdict of a jury or the finding of a trial court on conflicting testimony cannot be reviewed." (*Ripperdan* v. *Weldy,* 149 Cal. 667, [87 Pac. 276].) "With the conclusion of the lower court on conflicting evidence we cannot interfere." (*Riverside etc. Co.* v. *Riverside Trust Co.,* 148 Cal. 457, [83 Pac. 1003].) "We have no power to interfere with the finding on conflict of testimony." (*Humboldt etc. Soc.* v. *Dowd,* 137 Cal. 408, [70 Pac. 274].) It is declared that "Such language cannot be accepted as a correct statement of the true principle of law under consideration. It cannot be said that the appellate court cannot *review* a finding made upon conflicting evidence, for it is well settled that it is always the duty of the court to ascertain whether there is really a conflict, and if so, whether there is substantial support to the finding itself, and this process necessarily involves a review of the evidence." It is also stated that there is no foundation for the assertion that the appellate court lacks *power* to interfere with a finding though there be a conflict in the evidence, for the existence of the power has never been doubted. However, the conclu-

sion is reached that "the following is a correct statement of
the rule, viz.: that where there is a substantial conflict in the
evidence the supreme court will not disturb the verdict or
other decision of fact although it may be against the weight
of the evidence; but that if it appear to a reasonable cer-
tainty that the verdict or decision was wrong upon the evi-
dence, it will be set aside although there be direct testimony
in its support. Perhaps as good a statement of the rule as
can be given (so far as motions for new trial are concerned)
is that a motion for new trial, on the ground of the insuffi-
ciency of the evidence, is addressed to the discretion of the
court below, and that the ruling thereupon will not be dis-
turbed except for an abuse of discretion.''

Technically considered, no doubt the supreme court has the
power to interfere with a finding that is supported by sub-
stantial evidence or to set it aside when it appears "reason-
ably certain'' that said finding or verdict is wrong but, of
course, it is in no position to exercise the power justly or to
be assured that the finding or verdict is wrong where it is
supported by substantial testimony that is not inherently
improbable. This arises from the circumstance, to which at-
tention has been often directed, that the appellate court is
deprived "of those important aids to the attainment of a
correct conclusion, which the jury and the court below find in
the appearance and general bearing of the witnesses.'' (*Rice*
v. *Cunningham*, 29 Cal. 492.) If the weight of the evidence
was to be determined by the number of witnesses then the
rule manifestly would be applied differently by the appellate
courts. But it is well known that one witness may be truthful
and a dozen opposing witnesses be untruthful. In short, as
said by Baldwin, J., in *Kimball* v. *Gearheart*, 12 Cal. 28: "It
is almost impossible for an appellate court to satisfy itself in
a decision upon such matters. So much depends upon the
manner, bearing, character of witnesses, and the peculiar cir-
cumstances which the transcript fails to preserve, which give
value and weight to testimony.'' The question is not one of
the existence of the power or authority, but rather of the only
feasible and practicable method of exercising that power.

The situation of the trial judge in passing upon the motion
for a new trial is manifestly different from that of the appel-
late court. This is pointed out in the case of *Green* v. *Soule,*

145 Cal. 102, [78 Pac. 340], wherein it is said that the supreme court "cannot pass upon the credibility of witnesses and hence cannot interfere upon this ground" but that "the trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it."

With the foregoing considerations in view, how is it possible for this court to say that full credit should not be given to defendant, August Anderson, in his testimony that "I did a lot of work on dam No. 1. I did it at Dunaway's request. There was no writing; verbal understanding made at Reno at the time I was there trying to find out whether I should go to work or whether I should stop at the same time the work was tied up. The conversation was that I should go ahead and do all that I could and so as to get the water for the following year and if I needed any help I was to let him know. I wrote him on the 15th of October that I wanted $1,500. I didn't get it. He said to go ahead and do all I can to get the water; he said he would make it right. The work was done between the 10th day of October and the 15th day of November. Alfred Anderson and I did the work. It was done at Dunaway's request; it was all done on dam No. 1. I did other work building the canal. I built three miles of canal that was started by Edwards. That three miles of canal was built a long time before I took the contract for making dam No. 3. I valued it at sixty dollars a mile, three miles would be one hundred and eighty dollars."

It is not disputed that dam "No. 1" is the dam that is referred to in said count No. 3 of the cross-complaint. A mere reading of said testimony of Anderson makes it plain that the court was justified in concluding that as to said dam Dunaway was personally responsible to the Andersons for the value of their services in constructing it.

Since it does not appear that Dunaway made the request in a representative capacity it would be presumed, of course, that he was acting as a principal, and this presumption is strengthened by the fact that he had a personal interest in the work to be done.

It is manifestly of no concern to appellant that the court found that the corporation was also liable for the debt.

The finding as to the canal and ditch presents a somewhat different aspect. Anderson says that this was built a long time before he "took the contract for making dam No. 3." The court found that the contract for the construction of said dam No. 3 was made between the corporation and the Andersons and the evidence supports this finding. The conversation at Reno between appellant and August Anderson occurred after the latter took the contract for dam No. 3. It would follow that we could not look to the conversation at Reno for the origin of the contract to build said canal.

The record is, indeed, obscure as to the contract for this canal or ditch. It is at least doubtful whether there is disclosed sufficient evidence to support the finding that it was constructed at the instance and request of Dunaway. Appellant, however, is in no position to urge a reversal of the judgment on this ground. His denial of said allegation of the cross-complaint was as follows: "Deny that between the 10th day of August, 1909, and the 15th day of November, 1909, or at any time, the defendants hereinabove named or either of them, at the county of Lassen, or elsewhere, performed labor and services in the erection and construction of a certain dam for the storage of water on the southeast quarter of the southeast quarter of section 22, township 36 north, range 16 east, M. D. M., or at any place, and in the construction of three miles of canal and ditch, or either, at the special instance or request of the said plaintiff T. F. Dunaway and the said Madeline Land and Irrigation Company, or either of them or at all." The answer is, therefore, substantially a denial that plaintiffs built the dam and the three miles of canal and ditch or either the canal or ditch at the instance of appellant. It may be questioned whether a denial in this conjunctive form presents an issue. But if we construe it as a separate denial of each of said allegations we still have a striking example of a negative pregnant in the denial that plaintiffs constructed three miles of canal and ditch. As a matter of fact, it may be remarked, the evidence shows that these did not represent separate entities but both terms were applied to the whole artificial channel of three miles in length.

But if the foregoing somewhat technical consideration be not sufficient to warrant an approval of the finding in the

absence of any evidence on the subject, it is at least fair to hold that appellant, if he expected to rely upon this point, should have specifically indicated it in his specifications of error. He contented himself with the statement that "The evidence is insufficient to justify finding 21, that, nor is there any evidence that each and every allegation contained in paragraph 1 of defendants' third cause of action by way of cross-complaint is true." We may assume that to his failure to particularize may be attributed the absence of evidence in the record as to this point. In this connection it may be stated that the bill of exceptions does not purport to give all the evidence and it discloses no evidence whatever to negative the finding, appellant himself not having taken the stand.

We think the order denying the motion for a new trial should be affirmed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.