[Sac. No. 1274.    Department Two.—October 1, 1906.]

## GEORGE BUNDY, Respondent, v. SIERRA LUMBER COMPANY, Appellant.

NEGLIGENCE — FALL OF RAILROAD TRESTLE — DEFECTIVE CONDITIONS — SUPPORT OF VERDICT—CONFLICTING EVIDENCE.—In an action by plaintiff, who was an engineer in the employment of defendant, to recover damages from the fall of defendant's railroad trestle, owing to the alleged negligence of the defendant, where the verdict was for the plaintiff, and the evidence for the plaintiff was sufficient to warrant the jury in finding both that the trestle was originally defectively constructed and that at the time it fell, some twelve years after its construction, its timbers had become rotten and insecure to such an extent as to render the trestle unfit for the purpose for which it was constructed and being used, the finding of the jury, under conflicting evidence for the defendant, is conclusive, and not subject to review upon appeal.

ID.—EXPERT EVIDENCE OF CIVIL ENGINEER—DEFECTS IN CONSTRUCTION OF TRESTLE.—An experienced surveyor and civil engineer, shown to be skilled in bridge and trestle building, was properly qualified as an expert, and was properly allowed both to testify to his own observation and knowledge of the trestle in question and as an expert to the manner in which it was originally constructed and the particular defects in its construction, and as to how the trestle in its entirety should have been properly constructed to render it reasonably safe for the purposes for which it was intended to be used, and to state that the manner in which the stringers were placed upon the trestle, and the absence of bents, caps, and bolted timbers, and the use of nails or spikes instead of bolts in all parts of the trestle, rendered it unsafe in use.

ID.—GENERAL OBJECTION TO EXPERT EVIDENCE—UNSAFETY OF TRESTLE— SPECIAL OBJECTIONS NOT ALLOWED UPON APPEAL.—A general objection to an inquiry of such expert witness as to "whether that was the safe way for the construction of a trestle or bridge of that kind, considering the purpose for which it was used," to which the witness responded in the negative, that the inquiry was "immaterial, incompetent, and irrelevant," was properly overruled. Such objection did not include the objections that the matter was not a proper subject for expert testimony, or that the witness had not qualified

as an expert, and those special objections cannot be urged upon appeal for the first time.

ID.—IMPROPER CROSS-EXAMINATION OF EXPERT—"ABSOLUTE SAFETY." —It was proper to disallow inquiries made on cross-examination of such expert witness as to whether the trestle as he testified it should have been constructed would "bring absolute safety to the employees of the road," and whether "it would be sufficiently safe for a passenger-train to run over," where the only proper question was as to whether it was a reasonably safe trestle for the uses to which it was subjected,—viz. for logging purposes,—and where the witness had already stated on cross-examination that "it is necessary to have a trestle constructed in the way I have described in order with reasonable safety to carry such loads as they were accustomed to carry over those trestles."

ID.—EVIDENCE OF DEFENDANT'S KNOWLEDGE OF DEFECTS—CONVERSATIONS WITH AGENT—RES GESTÆ.—The testimony of a brakeman as to a conversation before the accident with an agent of the defendant, whose duty it was to examine the condition of the trestle, and to report any need of repairs to the trestle, in which conversation such agent requested him to ask the trestleman to go to work on the trestle in question, and said, "That trestle is going down and will kill the whole outfit of you; it is in bad shape," and that he delivered the message as requested, was admissible as part of the *res gestæ,* to show defendant's knowledge of the defective condition of the trestle; and it was also proper to allow the civil engineer to testify that he had prior to the accident called the attention of the manager of the road to the defective system of stringers used on the trestles and bridges on defendant's road, to show defendant's knowledge of such defects in the construction of the trestle in question.

ID.—INSTRUCTION—DEGREE OF CARE REQUIRED—MODIFICATION.—Where an instruction, as modified, correctly stated the rule of law as to the degree of care necessary to be exercised toward its employee by the defendant in constructing and maintaining the trestle in question, for the purpose for which it was actually intended and used, it was not error to modify it by omitting a preliminary statement distinguishing the degree of care so required from that which would be required of a railroad company in the performance of its duty toward passengers upon its trains," there being nothing in the case involving any such question.

APPEAL from an order of the Superior Court of Tehama County denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Morrison & Cope, C. H. Wilson, and A. M. McCoy, for Appellant.

J. T. Matlock, and W. P. Johnson, for Respondent.

LORIGAN, J.—This action is brought by plaintiff to recover damages for personal injuries sustained in the discharge of his duty while in the employment of defendant. Plaintiff on September 23, 1901, was an engineer engaged in operating a "logging train" over the railroad of defendant in hauling logs from Beale Camp to its mill at Lyonsville, a distance of about fifteen miles. The railroad of defendant between these points crossed a high trestle known as the "Big Wible Trestle," which, while the plaintiff was passing over it on the date mentioned with a "logging train," went down with the engine and cars, and plaintiff was severely injured.

The complainant alleged that the fall of the trestle was occasioned through defects in the construction, care, and preservation of said trestle, and through the negligence of defendant in allowing the timbers of which said trestle was constructed to become worn, rotten, and decayed, and without any fault of plaintiff the said trestle gave way, and the said track, locomotive, and train were precipitated to the ground below and demolished.

The case was tried by a jury, which returned a verdict in favor of plaintiff for two thousand five hundred dollars. Defendant moved for a new trial, which was denied, and this appeal is taken from such order of denial.

As grounds for a reversal, it is urged that the evidence is insufficient to justify the verdict, and that certain errors were committed by the court during the trial.

The claim that the evidence was insufficient is untenable. The evidence in the case was mainly directed on both sides to showing the character of the trestle as originally constructed, and the condition it was in at the time it fell. The evidence upon the subject, it may be said, was conflicting, but in this conflict there certainly was sufficient evidence produced by plaintiff to warrant the jury in finding not only that the trestle was defectively constructed originally, but also to warrant a finding that at the time it fell—some twelve years after its construction—its timbers had become rotten, loose, and insecure to such an extent as to render the trestle unfitted for the purpose for which it was constructed and was being used. And the evidence being so conflicting,

the finding of the jury under the conflict is conclusive, and not subject to review here.

Now, as to the errors of law complained of which we deem merit consideration.

Richard Gernon, a surveyor and civil engineer, skilled in bridge and trestle building, was called as a witness for plaintiff, and testified, both from observation and as an expert, to the manner in which the trestle in question was originally constructed, the defects in such construction, and how it should have been reconstructed to have been reasonably safe for the purposes for which it was designed. During his direct examination he testified as to the kind of stringers used, the manner in which they were placed on the trestle, and their effect, and was then asked: "Q. And you knew the manner that the stringers were placed upon the trestle?— A. I did.—Q. Now, I ask you whether that was the safe way for the construction of a trestle or bridge of that kind, considering the purpose for which it was used?"—to which the witness responded in the negative. To the latter inquiry defendant interposed an objection on the ground that it was "immaterial, incompetent, and irrelevant," which being overruled he excepted, and now claims that the court erred in its ruling.

In this court he insists that the objection should have been sustained for two reasons: 1. Because the matter was not a subject for expert testimony, and 2. Because, if it was, the witness had not qualified as an expert. There is no merit whatever in the second ground of objection. The evidence shows beyond question that the witness qualified as an expert. But even if it did not, we think, under the general objection made by appellant, it cannot now for the first time in this court, on account of both or either of the specific reasons, or particular ground of objection that it urges here, but which it did not directly present to the lower court, be heard to question the accuracy of the ruling. Without passing on the point whether or not the matter involved in the question was the subject of expert testimony, we do not think that, under the general objection presented, the appellant can now specifically raise it on this appeal. If the objection was intended to raise that question, it should have been directly made. Certainly it was proper for the plaintiff to prove that the

stringers, as placed upon the trestle, and their number, were insufficient to render it a safe structure. If the method adopted to do so was not proper, it should have been directly pointed out in the objection. To require this is simply a matter of fairness and justice, in order that cases may be tried on their merits. Had attention been called directly in the court below to the particular objection which it is now claimed the general objection of appellant presented, that court would have had a concrete legal proposition to pass on, and counsel for plaintiff would have been advised directly what the particular complaint against the question was, and, if he deemed it tenable, could have withdrawn the inquiry or reframed his question to obviate the particular objection. Trial judges are not supposed to have the numerous, varied, and complex rules governing the admissibility of evidence so completely in mind and of such ready application that under an omnivagant objection to a question they can apply with legal accuracy some particular principle of law which the objection does not specifically present. Counsel for appellant could just as readily have directly presented to the lower court the particular objections which he urges now, instead of objecting generally, and we think that in order to support any complaint on this appeal relative to the ruling he should have done so. As was said by the supreme court of Arizona in *Rush* v. *French,* 1 Ariz. 124, [25 Pac. 816], and quoted approvingly by this court in *Crocker* v. *Carpenter,* 98 Cal. 418, [33 Pac. 271], "The object of requiring the grounds of objection to be stated, which may seem to be a technical rule, is really to avoid technicalities and prevent delay in the administration of justice. When evidence is offered to which there is some objection, substantial justice requires that the objection be specified so that the party offering the evidence can remove it, if possible, and let the case be tried on its merits."

It is further insisted that the court erred in admitting in evidence, over defendant's objection, the testimony of the witness Homer Harvey as to a conversation had with him by James Lucas relative to the condition of the Big Wible trestle. Harvey was a brakeman in the employ of defendant, assisting in operating its logging-trains over this trestle. James Lucas was one of the section foremen in the service of

defendant. The evidence shows that it was the duty of Lucas to look in general after that part of defendant's road embracing the Big Wible trestle. He was to look after the groundwork entirely and report anything that was necessary in the way of repairs, or to see that the matter was repaired, and as to trestles, if there was one that needed fixing or repairing, it was his duty to tell the trestleman to repair it. Now, as to the conversation in question. Harvey testified that he had seen Mr. Lucas a short time before the accident, and then proceeded: "Well, I was sitting in front of my house one evening, and Mr. Lucas had been out to feed his horse, I think, and he stopped there and said: 'I wish you would tell Paul to go over and get to work on Big Wible trestle.' He says, 'That trestle is going down and will kill the whole outfit of you.' He says: 'It is in bad shape.' This was some time before the accident. I don't remember just how long. Three weeks or a month. No repairs were made to my knowledge on that trestle after that time before the accident. . . . He [Lucas] didn't speak any more as to that one trestle. I saw Mr. Paul and gave him the message. I don't remember whether it was the next day; it was in a day or two." This conversation was admitted over a general objection of appellant and the particular objection that the defendant could not be bound by any statements which Mr. Lucas might have made. The Mr. Paul referred to in the conversation was in the employment of defendant as foreman, having in charge a crew of men engaged in the work of repairing the trestles on defendant's road.

We perceive no error in the admission of this testimony. As one of the grounds upon which plaintiff based his right of recovery was that the defendant had negligently permitted the trestle to become defective, it was incumbent on him to show that the defendant had knowledge of such defective condition, or that by a reasonable inspection it could have been discovered. (*Brymer* v. *Southern Pacific Co.,* 90 Cal. 496, [27 Pac. 371]; *Sappenfield* v. *Main St. etc. Co.,* 91 Cal. 48, [27 Pac. 590].)

It was the duty of Lucas to examine that portion of the groundwork and the general condition of the Big Wible trestle. He was the agent of the company for that purpose. It was his duty to ascertain whether repairs were necessary,

and to inform the other agent of the company—the foreman of the trestle-repairing crew—of their existence so that the repairs might be made. His conversation with Harvey was in the line of a proper performance of his duty. He sent him to inform Paul, the trestle repairer, that the trestle was in bad condition and to make the necessary repairs. As tending itself to show that the defendant had knowledge through its agents of the defects in the trestle, this evidence was relative. (*Kauffman* v. *Maier,* 94 Cal. 269, [29 Pac. 481] ; *Elledge* v. *Railway Co.,* 100 Cal. 282, [38 Am. St. Rep. 290, 34 Pac. 720].)

As to the language used by Lucas, it was illustrative of his act in sending notice to the trestle repairer; it was used in the discharge of his duty to the company, and it was part of the *res gestæ*—a declaration made *dum fervet opus.* It was certainly admissible to prove generally that Lucas notified Paul, the trestle foreman, that the trestle was in a defective condition, and when what he did in that regard is admissible, it is equally competent to prove what was said by him about these defects while he was doing so. It was a declaration made during the continuance of the agency in regard to a matter concerning which it was the duty of the agent to act, and as part of the *res gestæ* was admissible. (*Beasley* v. *San Jose Fruit Packing Co.,* 92 Cal. 392, [28 Pac. 485] ; *Birch* v. *Hale,* 99 Cal. 301, [33 Pac. 1088] ; *Silveira* v. *Iversen,* 128 Cal. 187, [60 Pac. 687] ; *Krogg* v. *Atlanta etc. Co.,* 77 Ga. 202, [4 Am. St. Rep. 79].) The cases cited by appellant against the admission of the declarations of Lucas are not in point. They apply to declarations of an agent made after the accident—declarations which are not part of the *res gestæ,* and which are universally held to be inadmissible. The distinction between these cases and the case at bar is that in this case the declarations were not made subsequent to the accident, but prior to and relative to a matter concerning which the agent was acting within the scope of his employment,—a matter depending at the very time and arising from his duty under the agency,—to examine the trestle for the purpose of discovering the defects, and to notify the trestle foreman of them and of the immediate necessity for repair.

In connection with the alleged inadmissibility of the con-

versation between Harvey and Lucas, may be considered the further claim made by defendant that it was improper for the court to permit the witness Richard Gernon, heretofore referred to, to testify that he had, prior to the accident, called the attention of J. C. Turner, manager of defendant's road, to certain defects in the trestles and bridges on that road. This defect was with reference to the system of stringers used. This evidence was, we think, admissible as showing that the attention of the defendant prior to the accident had been called to what was claimed to be a defect in the original construction, as bearing on the question of negligence in failing to obviate the defect. It is true that the inquiry, in so far as it applied generally to the trestles and bridges on the defendant's road, was too broad. Defendant, however, did not object on that account. If in fact the particular defect as to these stringers was common to all the trestles on the road, no harm resulted to the defendant from the admission of the evidence as to them in the aggregate, because it is quite apparent from the testimony of Gernon, given prior and subsequent to the evidence objected to, that he had in mind, and was applying his testimony particularly to, the defects existing in his judgment in the Big Wible trestle.

The same witness, Gernon, as an expert trestle and bridge builder, testified for plaintiff as to how the Big Wible trestle should have been constructed, considering the purposes for which it was intended to be used. He went into details as to these matters, and testified, among other things, that there should have been additional and perpendicular posts inside the bents of the trestle as originally constructed, and also that the caps should have been longer, and should have had pieces of timber firmly bolted on them so as to hold the cars or train from going over the trestle in case of derailment. Defendant objected to this evidence, but we think it was admissible. In fact we can see no pertinent objection to it. This witness was testifying as to how the trestle should have been properly constructed, and if in a proper construction, for the purpose intended, it should have had these bents, caps, and bolted timbers, it was proper to show it. It is claimed that the question of guard-rails and derailment of the logging-train was not involved in the case; that plaintiff's right of recovery proceeded upon the theory either that the

trestle was not properly constructed originally, or that it had been suffered to go to decay, and that the plaintiff's injury occurred through the fault of the trestle for either or both of those reasons. This is true, but did not preclude proof as to how the trestle in its entirety should have been properly constructed; and it is further apparent from the testimony that while these guard-rails were primarily to prevent derailment, they tended also to strengthen the trestle.

This witness also testified, over defendant's objection, as to the effect that running trains over the trestle would have upon the diagonal timbers used in its construction; that the jar of the train in running over them—the vibration—would have a tendency to loosen the nails or spikes driven in the bracing, and thus shake loose the bracing itself; that instead of nailing these timbers, they and all parts of the trestle should have been fastened with bolts. There was nothing improper in admitting this testimony. It is not such a matter of common knowledge whether vibration occasioned by the passing of a logging-train over a trestle will or will not loosen spikes in its timbers that the testimony of one conversant with such matters from experience is inadmissible. Neither is it a matter of such common knowledge that a trestle is more securely constructed, for the purpose the one in question here was built, by the use of bolts rather than of nails or spikes. Hence it was entirely proper to admit the evidence of the witness on both matters, as a proper subject for expert testimony.

The appellant further complains because the court sustained objections of the plaintiff to interrogatories made by defendant's counsel of the witness Gernon on cross-examination, as to whether the trestle, as he testified it should have been constructed, would "bring absolute safety to the employees of the road," and whether it would "be sufficiently safe for a passenger-train to run over." The objection was properly sustained. It was not a question in the case whether "absolute safety" would be secured, or whether a passenger-train could safely be operated on the trestle in question, but simply whether the trestle as constructed or maintained by defendant was a reasonably safe trestle for the uses to which it was subjected. Aside from this, it is apparent from the narrative

of the testimony of this witness in the record, that prior to the particular inquiries complained of here appellant had endeavored to show by the witness that in describing how the Big Wible trestle should have been built he had in contemplation a stronger one than the logging purposes of defendant required, because in response to an inquiry on cross-examination in that direction the witness had answered, "I mean to say that it is necessary to have a trestle constructed in the way I have described in order with reasonable safety to carry such loads as they were accustomed to carry over those trestles." Hence, assuming that the questions objected to were permissible, the witness having already been examined by appellant, and having testified on the subject, no harm was committed in precluding further inquiry.

Complaint is made because the court modified one of the instructions asked on behalf of the defendant. The modification consisted in striking out the first sentence thereof as follows: "The defendant was not required to use the degree of care in the construction of this trestle in satisfying the demands of the law as to its duty towards its employee, as would be required of a railroad company in the performance of its duty towards passengers upon its trains." The court gave the rest of the instruction, which correctly stated the rule of law as to the degree of care necessary to be exercised by the defendant in constructing and maintaining the trestle in question for the purpose for which it was actually intended and used. We perceive no error committed by the court in modifying the instruction. Counsel for appellant insists that the instruction as tendered was in the language of this court as expressed in *Dolan* v. *Sierra Ry. Co.,* 135 Cal. 436, [67 Pac. 686]. This is true, but for that reason it was not error to refuse it. It does not follow because a trial court does not give an instruction in the language employed by an appellate court in reasoning out a proposition of law or elaborating upon it that error is thus committed. The most that the trial court is required to do is to give instructions which will embody clearly the principles of law under which the jury is to apply the evidence in the case before them. There was nothing in the case at bar involving any question of the degree of care due from a railroad company in relation to its passengers. The question actually before the jury was

whether the defendant performed its duty by the exercise of ordinary care in the construction and maintenance of this trestle for the purpose for which its servant—the plaintiff— was required to use it. The trial court in several instructions clearly instructed the jury on that point, which was all it was required to do, or to which either of the parties was entitled. Some other points are presented on this appeal, but we do not think they merit particular discussion.

The order appealed from is affirmed.

Henshaw, J., and McFarland, J., concurred.