[Civ. No. 14298.   First Dist., Div. Two.   July 10, 1950.]

SEARS LEWIS, Respondent, v. SOUTHERN PACIFIC
COMPANY (a Corporation), Appellant.

Carlson, Collins, Gordon & Bold, Robert Collins, Frederick Bold, Jr., and Steven H. Welch, Jr., for Appellant.

Bernard E. Allard, Franklin C. Stark, Stanley E. Sparrowe, Nichols, Richard & Allard and Stark & Champlin for Respondent.

DOOLING, J.—Defendant appeals from a judgment entered on the verdict of a jury. The jury returned a verdict of $27,500 which was reduced by plaintiff's consent to $22,500 pursuant to an order denying a motion for new trial conditioned on such consent.

Plaintiff, an employee of the Union Oil Company, was injured by the door of a boxcar falling upon him while he and a fellow employee were attempting to close it. The boxcar had been delivered by defendant to the Union Oil Company at its plant on March 6, 1947. It was loaded by the oil company and on March 11 plaintiff and his fellow employee were engaged in closing the door. The door would not move and the fellow employee took a pinch bar and with it was applying pressure forward on the door while plaintiff was attempting to pull it manually, when the door fell outward from the top upon plaintiff causing his injuries. The complaint counted on defendant's negligence in furnishing the boxcar in a defective condition.

Since appellant argues that there is no evidence to sustain a finding of its negligence and that the evidence shows without conflict that the casualty occurred solely as the result of the negligence of respondent and his fellow employee a somewhat detailed recital of the evidence is necessary.

The door is suspended at its top upon what is described in the evidence as a channel Z iron, the upper edge of the door having a metal lip which fits into the depression of the Z iron extending into it from 1 inch to $1\frac{1}{2}$ inches. The bottom of the door is held in place by five steel door guides or brackets which curve upward at their outer ends thus holding the door in place. When closed the door rests upon three of these door guides and as it opens its weight is carried successively by two

or three of such guides. Immediately after the door's fall it was discovered that two of the guides were bent downward, the center guide being just about flat and the one immediately to its left as one faces the car being bent down from $1\frac{1}{4}$ to 2 inches below its normal curved condition. There was evidence that, if the center guide was in the same condition before the fall of the door as afterwards, when the door reached a certain position over this guide it would fall outward as it did.

The car was inspected immediately before its delivery to the Union Oil Company by two of appellant's inspectors, one of such inspectors examining each side. The inspectors had no independent recollection of the particular car but testified that in making such inspection they regularly examined the doors. The inspection was made after the train was made up and the particular train of which this car formed a part contained 14 cars. The inspection commenced at 9:05 and the train pulled out at 10 o'clock. A record kept by one of the inspectors showed that a defective brake shoe had been discovered on the car in question which the inspectors had replaced. This operation "takes about five to seven minutes, according to how hard they are to put on."

From the time the car was delivered to the Union Oil Company it remained continuously alongside the company's loading platform and the door remained open. In loading, a steel plate was placed between the platform and the floor of the car, which was above the door guides and did not touch them. Neither plaintiff nor his fellow employee observed the condition of the door guides before the accident. In forcing the door with the pinch bar the fellow employee testified that at no time did he put the pinch bar between the car and the door or exert any outward pressure on the door. The end of the bar was placed against rivet heads on the side of the car and the pressure applied to the edge of the door. The door guides were rusty and after the fall of the door there were no marks of any kind observed on the defective door guides.

This court must affirm the implied findings of the jury if supported by any substantial evidence or any reasonable inference which may be drawn from the evidence, and if either of two inferences may be reasonably drawn the implied finding cannot be disturbed if supported by one of them. (*Mah See v. North American Acc. Ins. Co.*, 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123]; *Webster v. Board of Dental Examiners*, 17 Cal.2d 534, 539-540 [110 P.2d 992]; *Hamilton v. Pacific Elec. Ry. Co.*, 12 Cal.2d 598, 603 [86 P.2d 829].)

We cannot hold that the evidence above recited is not open to the reasonable inference that the boxcar was delivered by defendant with the door guides in the same defective condition as they were found immediately after the fall of the door. The inspectors had no independent recollection of the particular car. They examined a 14-car train in 55 minutes or less and 5 to 7 of these minutes were spent in replacing a brake shoe on this particular car. The car stood at the loading platform continuously after delivery with the door open. The guides were rusty and no fresh marks were found on them. The fellow employee testified that he exerted no outward pressure on the door. The jury might reasonably conclude that a rusty guide could not be bent several inches by the falling door, which is appellant's theory, without some marks appearing thereon and might discount the inspectors' testimony in view of the facts that they had no independent recollection of their inspection, that they might have been distracted by the discovery and replacement of the defective brake shoe on this particular car, and that being employees of appellant they had an interest in asserting the carefulness of their inspection. From these and the other facts the jury might reasonably infer that the appellant had negligently delivered a car with a defective door guide and that this was the proximate cause of respondent's injury.

The main contention of appellant as to the negligence of respondent and his fellow employee is based on the theory that the use of the pinch bar forced the door outward causing it to leave the channel of the Z iron and fall outward from the top and that its pressure on the guide bars in falling was what bent them downward. If the jury believed the testimony of the fellow employee that he only exerted pressure laterally against the edge of the door, as they were entitled to do, the fall of the door could not be explained in this fashion. The fact, adverted to, that if they could not close a door it was their practice to call the oil company's train crew does not show their negligence as a matter of law in attempting to close the door as they did instead of calling the crew. Whether they should, acting as persons of ordinary care and prudence, have observed the defective guides and whether if they had they should with their knowledge have realized the danger were properly questions for the jury. ''Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference

and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury.'' (*Dwelly* v. *McReynolds*, 6 Cal.2d 128, 133 [56 P.2d 1232].)

■ A photograph taken 20 minutes after the door fell was introduced showing the bent door guides. When it was offered the following occurred:

''Mr. Collins: I am objecting to the picture . . . You have no knowledge as to whether that was the condition of the door guides before the accident, do you? A. No.

''Mr. Collins: We will object on the ground it doesn't show the condition at the time of the accident . . .

''The Court: I think the objection should be overruled, Mr. Collins. I think that was taken at or near the time of the happening.''

The action of the court was not error. The photograph was admissible to show the condition of the car immediately after the door fell from it. Appellant argues, however, that the court should have instructed the jury, although no request for such instruction was made, ''that the condition of the guide rails as therein depicted could not be used to prove their condition before the door fell.'' We cannot see how the jury could have been misled. The evidence clearly showed that the picture was taken after the mishap. The opposing theories were presented to the jury as to whether the fall of the door bent the guides or the guides were already bent and permitted the door to fall. ■ In any event appellant having asked for no such instruction is not now in a position to complain that none was given. ''[I]t is not the duty of the judge to instruct the jury as to the limited purpose for which the evidence is admitted unless requested to do so.'' (24 Cal.Jur. 762.)

■ After the jury had retired in the courtroom, because the only jury room was occupied by a jury from another department, the foreman sent word to the judge by the bailiff that the jury desired a designated instruction reread to them. Without summoning counsel the judge opened the instructions, which were bound together in some fashion, to the particular one requested, gave them to the bailiff and instructed the bailiff to tell the foreman to read that instruction. The instructions remained in the courtroom with the jury until they returned their verdict. When the verdict was returned one of plaintiff's instructions was found among the exhibits in the case. The action of the trial judge in this respect was highly irregular error (*Nelson* v. *Southern Pacific Co.*, 8 Cal.2d

648, 655 [67 P.2d 682]), but we are satisfied after an examination of the record that no prejudice resulted.

The particular instruction requested by the jury reads.

"Upon retiring to the jury room you should first consider the question of the legal responsibility for the accident which forms the basis of this action, having in mind that all issues must be established by a preponderance of the evidence.

"You should determine:

"First, whether or not the defendant was negligent as charged in the plaintiff's complaint;

"Secondly, whether or not such negligence, if such is your finding, was a proximate cause of plaintiff's injuries, if any.

"Thirdly, whether or not the plaintiff was himself negligent as charged in the defendant's answer, and

"Fourthly, whether or not such contributory negligence, if any, of the plaintiff proximately contributed to the plaintiff's injuries, if any."

Immediately after the jury returned its verdict and before the jury was discharged, the foreman and each of the other jurors was questioned as to what had occurred in the jury room. The foreman stated that he had read the instruction above quoted to the other jurors and had copied the four steps therein outlined on four slips of paper. He and each of the other jurors stated that none of them had read the plaintiff's instruction which had been found among the exhibits, none of them had read any other instruction than the one above quoted, and none of them had read any other book or paper that was in the courtroom.

The particular instruction read by the foreman to the jury and copied by him simply outlined the order in which the jury should consider the several questions presented to them and we cannot see that any prejudice can have resulted from their having this before them in writing. Appellant suggests that this instruction did not present its theory that the casualty was the sole proximate result of the negligence of respondent and his fellow employee. The plain answer is that the jury must have found that the proximate cause was appellant's negligence and in doing so necessarily excluded the theory suggested by appellant.

The court said in *Nelson* v. *Southern Pacific Co., supra,* at page 655 of 8 Cal.2d: "Any other method of communication is held to go to the substance of the right of trial by jury and because of its nature is deemed to be prejudicial except in very exceptional circumstances." Nevertheless when it so clearly

appears that no prejudice has resulted from the court's irregular communication to the jury, the error cannot be deemed to be prejudicial. (*Santina* v. *General Petroleum Corp.*, 41 Cal. App.2d 74, 77-78 [106 P.2d 60]; *Day* v. *General Petroleum Corp.*, 32 Cal.App.2d 220, 237-238 [89 P.2d 718]; *Tice* v. *Pacific Elec. Ry. Co.*, 36 Cal.App.2d 66, 72-74 [96 P.2d 1022, 97 P.2d 844].)

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 7, 1950. Edmonds, J., and Schauer, J., voted for a hearing.