[Civ. No. 14521. First Dist., Div. One. June 27, 1951.]

J. E. KEIM et al., Appellants, v. D. B. BERELSON & COMPANY (a Copartnership) et al., Respondents.

Marvin Handler and Dana, Bledsoe & Smith for Appellants.

Alfred F. Breslauer and Appel, Dains & Liebermann for Respondents.

WOOD (Fred B.), J.—Plaintiffs, copartners doing business as wholesale produce dealers in Arizona, have appealed from the judgment entered upon a verdict against them and in favor of defendants, copartners doing business as brokers in California, for breach of warranty of crushed, frozen pineapple purchased by plaintiffs.

Appellants do not question the sufficiency of the evidence to support the verdict. They claim the judgment should be reversed because of asserted errors in ruling on the evidence and in giving and refusing instructions to the jury.

The pineapple was grown in Mexico, purchased by Miller Brothers Foods Company, processed and frozen at its plant near Edinburg, Texas, and then shipped (one carload of 1,624 cases) to Tucson, Arizona, where appellants, received and on July 25, 1945, stored it in their locker in an ice plant. Within a few days 73 cases were removed to another frozen food warehouse and then distributed by truck to various retail outlets in Arizona. August 16, 1945, appellants shipped the remaining 1,551 cases to a buyer at Seattle, Washington. Upon arrival at Seattle, this lot was found sour, decomposed, and fermented. Efforts to salvage and recondition it proved unsuccessful. The entire lot was eventually condemned by the government. Meanwhile, about one-third of the 73 cases proved sour and were returned to appellants.

Appellants claim that the pineapple was defective when delivered to them at Tucson; respondents, that the spoilage occurred after delivery, caused by improper storage by appellants at Tucson.

As to the contract of sale, appellants claim that they bought from respondents, as principal, through Smith-Whalen (an Arizona brokerage firm who negotiated the sale) as respondents' agent. Respondents claim that appellants bought from Smith-Whalen who was agent for Miller Brothers Foods Company and did not disclose the name of the principal; i. e., that respondents were general agents for Miller Brothers but had delegated Arizona business, including this transaction, to Smith-Whalen who as subagent represented the principal and for whose acts respondents were not responsible.

One of the assertedly erroneous instructions read as follows: "The sworn statement by J. E. Keim that Keim Produce Company purchased the pineapple from Miller Brothers Foods Company of Edinburg, Texas, is evidence that Keim Produce Company, at the time it purchased the pineapple in question, knew that the pineapple was being purchased from Miller Brothers Foods Company and that D. B. Berelson and Company was only the sales agent or broker for Miller Brothers Foods Company."

The statement mentioned was made by Keim in a third party claim filed by appellants October 4, 1945, in the government's condemnation proceeding then pending at Seattle. In it he said "That prior to August 16, 1945, claimants purchased from Miller Brothers Foods Company, of Edinburg, Texas, a quantity of frozen foods, including the 1549 cases, more or less, each case containing twenty-four one-pound cups of articles labeled in part, 'Miller's Lone Star Frozen Crushed Pineapple, packed with pure pineapple juice and sugar, Net Weight when Packed one pound, Miller Bros. Foods Co., Edinburg, Texas,' lib[e]led in the above action."

Appellants contend that at the time of their oral contract with Smith-Whalen (July 9, 1945) they believed that Berelson owned the pineapple and was the principal, that they then had no knowledge of Miller Brothers; that Keim's October statement was consistent with appellants' claim they acquired that knowledge later; that said statement might at most form the basis of an inference that at the time of contracting they knew Miller Brothers was the seller; and that the instruction gave the jury the impression that the statement was not merely evidence from which an inference might have been

158

drawn but that it gave rise to a presumption, as a matter of law, that Keim had such knowledge at the time of the contract; hence, that the instruction had the effect of telling the jury what inference they might draw from certain facts in evidence. We do not so view it. By that instruction the court merely told the jury that the written statement made by Keim in October (potentially inconsistent with the position taken by appellants at the trial concerning their claimed lack of knowledge of Miller Brothers in July) was evidence for the consideration of the jury. The court also told the jury that ''Statements or admissions made do not prevent the party who made them from showing the circumstances under which they were made in order to explain the meaning and intent of the statement''; that the jury are the exclusive judges of all questions of fact, the weight of the evidence and the credibility of the witnesses, and must not select a single instruction or portion of an instruction but must consider all of the instructions as a pattern in determining any issue in the case. It is similar, though not identical, to the situation presented in *Fawkes* v. *Reynolds*, 190 Cal. 204 [211 P. 449], an action for damages for an alleged battery upon the person of the plaintiff. Concerning evidence of a plea of guilty entered by the defendant in a criminal action based upon the same occurrence, the trial court instructed the jury that ''. . . 'Such plea of guilty is not to be taken by you as being conclusive that the defendant was guilty of the crime of assault and battery against the plaintiff. This plea of guilty should only be regarded by you as an admission on the part of the defendant, and·it is proper that you should consider all that was said by the defendant at that time.' '' (P. 213.) The Supreme Court held that instruction proper, deeming it important that the jury be advised that the plea of guilty was not conclusive but that the jury was to determine the question, ''treating the plea of guilty as an admission of the defendant to be weighed in connection with his explanation thereof and all the evidence in the case.'' (P. 213.) The Fawkes case was decided in 1922. ■ The 1934 amendment to section 19 of article VI of the state Constitution authorizes the trial court to ''make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case.'' The amendment, obviously, enlarged the province of the court in this regard beyond that formerly permitted by section 19 of article VI, which, until 1934, declared that ''Judges shall not charge

juries with respect to matters of fact . . ." (See discussion in *People* v. *Gosden*, 6 Cal.2d 14, 28 [56 P.2d 211]; *People* v. *Ottey*, 5 Cal.2d 714, 722-730 [56 P.2d 193].) We do not find error in the giving of the questioned instruction.

Appellants claim the following instruction was erroneous: "If you find from the evidence that the copartnership, D. B. Berelson and Company, was in fact acting as an agent and broker for the account of Miller Brothers Food Company of Edinburg, Texas, in the sale of the pineapple involved, and that at the time an enforceable and binding contract for the sale of the pineapple to Keim Produce Company was made, Keim Produce Company knew that D. B. Berelson and Company was acting as agent for Miller Brothers Food Company, your verdict in such case must be in favor of defendant D. B. Berelson and Company." Appellants say the vice of this instruction inheres in the words "at the time an enforceable and binding contract for the sale of the pineapple [was made]"; that those words refer to the time of performance (acceptance of delivery and payment of the purchase price) because it was an oral contract, not "enforceable" until part performance; and that the time when that knowledge was significant was the time of the making of the oral contract. We do not deem that a reasonable interpretation of the instruction. There was no plea of the statute of frauds and no instruction concerning it. The questioned instruction was immediately followed by this one: "A person who makes a contract with another as agent for a disclosed principal does not become a party to the contract. A disclosed principal is one whose identity at the time the contract was made was known to the third person with whom the agent deals." The court had already informed the jury that "A valid contract of sale may be made by word of mouth or may be inferred from the conduct of the parties. It need not be in writing," and "An agent who enters into a contract of sale in his own name without disclosing the identity of his principal renders himself personally liable, even though the buyer knows he is acting as an agent," and "Before an agent can avoid liability on the ground that he acted as a mere agent or broker he must show that he indicated the name or identity of his principal clearly and in such manner as to bring the identity to the actual notice of the buyer." The questioned instruction referred to the time of the making of the oral contract and did not assume facts not in evidence. The statement that Keim

made in the third party claim which appellants filed in October (discussed earlier in this opinion) was some evidence that he and his firm knew, at the time of the oral contract, that Miller Brothers Foods Company was the principal. We conclude that the trial court did not commit error in giving the instruction.

Appellants assign as error the court's refusal of their proposed instructions on circumstantial evidence, as follows: "You may find in accordance with an inference which you might reasonably make from circumstantial evidence even though direct evidence, if any, to the contrary has been introduced by the defendant. It is not necessary that a jury accept as true all direct evidence, if any, offered in opposition to an inference. If direct evidence is offered by a defendant to contradict an inference you may reject the direct evidence and accept the inference if the direct evidence is not clear, positive, uncontradicted, or free from doubt," and "It is not necessary in order to establish a theory by circumstantial evidence that the plaintiffs show that their theory is the only conclusion that can fairly or reasonably be drawn from the evidence. It is not necessary that the plaintiffs prove that degree of certainty which excludes every other reasonable conclusion." The court refused these instructions upon the ground that they were covered by instructions given the jury. The court gave these instructions on this subject: "The plaintiffs may rely on inferences, and inferences are what the reason of the jury may draw as a logical conclusion from facts which have been proved in the case," and "In this case the plaintiffs are seeking to prove a negative, that is, they are seeking to prove that the unmerchantable condition of the pineapple claimed by them to have existed was not due to conditions existing after passage of title in the pineapple to the plaintiffs. In this connection the plaintiffs are seeking to prove that the transportation and storage of the pineapple after its arrival in Tucson was not the cause of deterioration, if any. The law recognizes that the proof of a negative is difficult and it is the law that slight proof by a plaintiff in support of a negative will be sufficient to make out a prima facie case." The differences between the instructions requested and those given were more of form and phraseology than of substance. Those given were apt to the situation; focused attention more pointedly to the problem; and thus were as favorable to appellants as the more formal and abstract instructions which they requested. Appellants had introduced evidence that where ripe pineapple is shipped from

the field to the processing plant over the distance and under the temperature and other conditions this pineapple was shipped, a high percentage of it will ferment, and it would be hard to separate the spoiled from the unspoiled fruit and avoid getting a deleterious product into the pack. There was no direct evidence that any of the fruit purchased by Miller Brothers Foods Company did ferment on the way to the plant, nor that any fermented fruit did in fact get into the pack.

Appellants assert error of the court in sustaining an objection to a question they asked of an expert, ". . . will fresh pineapple ferment before it is processed and frozen?" The witness answered "yes," whereupon an objection was interposed and sustained. But no motion to strike was made and no admonition requested or given the jury to disregard the testimony. Appellants also claim that in sustaining the objection the court made a prejudicially unfair comment on the evidence. That comment was: "You haven't any testimony from [which] you might say that [fermentation of fresh pineapple] could have happened here." Upon the making of that statement, the following discussion between appellants' counsel and the court immediately ensued: "Mr. BLEDSOE: Well, if the Court please, I don't like to take exception to your Honor's remarks, but I think that is something that ought to be stricken from the record and the jury admonished. THE COURT: Well, I mean I don't recall it. I am not saying there isn't any, but there is none that I recall. Mr. BLEDSOE: I think the weight of the evidence is for the jury, your Honor. THE COURT: There is no question of that. I have told the jury before they are the final arbiters of it. But I will sustain the objection." Then the court allowed quite extensive testimony by the same witness on that subject. In the instructions given at the end of the trial, the court advised the jury it was their duty to pass upon all questions of fact, unaided by any suggestion from the court; that with questions of fact, the weight of the evidence, the credit they should give any witness, the court had nothing to do; that those were matters entirely within their province and which they must determine for themselves. We find in that situation no basis for predicating error.

Miller, who processed the pineapple, testified that he packed from the same stock, and shipped, one other carload the same day as the carload lot here involved. He was asked if he had received any complaint about the other carload

being defrosted or having soured or been contaminated in any way. Appellants objected to that question as "incompetent, irrelevant and immaterial." The objection was overruled. The witness answered "No." The overruling of that objection, appellants assign as error. The court sustained their objections to similar questions later addressed to Miller concerning other shipments, and in so ruling the court said to counsel for respondents, "Well, I have allowed you to show the one car that was packed under the same circumstances and out of the same pack, but if you go into the shipments all season, there are many varying conditions."

Appellants' point is not well taken. One of their experts testified upon cross-examination that if in such a case fruit in one car spoiled and that in the other did not, in his opinion the two carload lots left the plant in the same condition and something happened later to cause the spoilage. That shows the relevancy of the question, the answer to which would furnish some evidence of spoilage or nonspoilage of fruit in the other car. ■ Appellants now object that the question erroneously called for hearsay. They did not so specify at the trial when respondents could have tendered evidence that was not hearsay, if they had such evidence available and desired to use it. The objection which appellants made when the question was asked ("incompetent, irrelevant and immaterial") was too broad reasonably to include, and to present to court and opposing counsel, the specific objection that the question called for hearsay. "It is well settled that when a general objection to the admission of certain evidence is overruled by the trial court, the party against whom the ruling is made cannot raise for the first time on appeal a specific objection thereto, unless the evidence is not admissible for any purpose." (*Estate of Pierce*, 32 Cal.2d 265, 273 [196 P.2d 1], holding that a general objection to evidence which is relevant does not present the question of its admissibility on the ground of remoteness.) ■ An objection to evidence upon the ground that it is incompetent, irrelevant and immaterial is too general to present the question whether the subject is proper for expert testimony or that the witness is qualified (*Bundy* v. *Sierra Lumber Co.*, 149 Cal. 772, 773 [87 P. 622]), or that an instrument is not properly authenticated and that no proper foundation has been laid for introduction of a copy (*Attebury* v. *Wayland*, 73 Cal.App.2d 1, 3 [165 P.2d 524]), or that a witness has insufficient knowledge of the value of property injured to testify as to the amount

of the damage (*Brumley* v. *Flint*, 87 Cal. 471, 473-474 [25 P. 683]). ■ Hearsay evidence, if admitted without objection, is sufficient to establish a fact. (*Mercantile Trust Co.* v. *Sunset etc. Co.*, 176 Cal. 461, 466 [168 P. 1037].)

Finally, appellants assert error of the court in sustaining objections to certain questions they addressed to Miller concerning his interest in the outcome of the litigation. These questions were: "Did you or have you agreed to finance the defense of this action?"; "Have they [respondents] tendered to you the opportunity to defend this case?" "Had you received any communication before this case came to trial from Berelson . . . advising you of the pendency of this litigation and advising you that in the event they sustained a loss or lose this case that they will look to you for reimbursement?" Appellants claim these were proper questions upon cross-examination by way of impeachment. However, they did elicit from Miller the fact that he came all the way from Texas, at his own expense, to testify in the case. In response to their question, "Have you made any promise to Mr. Berelson or the Berelson concern with reference to repayment to them if they lose in this litigation?" he answered, "No, sir, I have not." His interest as processor and shipper of the fruit was, of course, apparent. ■ The extent to which counsel should be permitted to pursue the question of interest, upon cross-examination, is committed largely to the sound discretion of the trial judge, including the determination when further questioning becomes merely cumulative. We find no error in the court's rulings upon the quoted questions relative to Miller's interest in the outcome of this litigation.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.