[Civ. No. 22947. Second Dist., Div. One. June 26, 1958.]

ANTHONY RUPP, Respondent, v. WILLIAM SUMMERFIELD, Appellant.

William John Hyland III for Appellant.

Harry P. Glassman for Respondent.

LILLIE, J.—Defendant appeals from a judgment entered pursuant to a jury verdict awarding plaintiff $3,000 general damages and $2,000 punitive damages in a malicious prosecution action.

The basis for plaintiff's claim was a criminal prosecution in which he was charged with grand theft and which was dismissed by the court after a preliminary hearing at which defendant and appellant herein testified.

On this appeal, appellant makes no claim that the evidence was insufficient to support the judgment or that the damages were excessive, but submits error on the part of the trial court in admitting into evidence the transcript of the preliminary hearing and in giving certain instructions to the jury.

Plaintiff and defendant had what might be described as an intimate and close personal friendship. Almost immediately after they met, defendant gave plaintiff expensive presents, clothing, money and jewelry. He opened a joint bank account with plaintiff, giving him access, at one time, to close to $4,500 of his money. He paid for a Jaguar and Cadillac for plaintiff and rented him an apartment, partially furnishing it. They traveled extensively and when in Los Angeles defendant was a constant nightly visitor of plaintiff.

Plaintiff testified that in January of 1955, while having dinner at a restaurant, defendant gave him for his birthday his Patek Phillipe gold wristwatch and band valued at approximately $800, which plaintiff later took to a jeweler, under his own name, to have band adjusted. Thereafter he wore the watch both in and out of the defendant's presence. On the night defendant gave him the watch he returned with plaintiff to his apartment and stayed the night. He told plaintiff that to "convince his wife" that the watch had been lost, he would report its disappearance to the police. That evening, or the next day, defendant reported the watch "lost and possibly stolen" to the sheriff's department and filed a claim with the insurance company, from which he recovered $850.

Witness James O'Brien testified that in the Spring of 1955 while having dinner with plaintiff and defendant, defendant called attention to the watch on plaintiff's wrist and asked him how he liked the watch he had given him.

In June, defendant's wife objected to the relationship and

plaintiff decided to go to San Francisco. He told defendant he was leaving him and asked him for money for transportation, which defendant refused. To raise the necessary funds plaintiff, in his own name, pawned the wristwatch in question and a television set in Hollywood and moved to San Francisco. In July or August, 1955, the police told defendant that the watch had been recovered and had been pawned in the plaintiff's name. Immediately thereafter, a warrant was issued charging plaintiff with having stolen defendant's watch. Plaintiff was arrested in San Francisco and held in custody approximately six weeks.

On September 23, 1955, a preliminary hearing was had in the municipal court at which time defendant Summerfield testified and denied having given the watch to plaintiff Rupp. The court dismissed the criminal action against Rupp on the ground there was not reasonable or probable cause to believe he had committed the crime of grand theft.

In the instant action defendant's sole defense was that at no time had he given plaintiff the wristwatch in question.

At the trial, plaintiff's counsel offered in evidence the transcript of the preliminary hearing and the following colloquy took place:

"MR. GLASSMAN: . . . I will ask that this be marked as the plaintiff's exhibit in evidence, your Honor.

"THE COURT: No. 1.

"MR. HYLAND: Your Honor, I would like to make a query as to the admissibility of the exhibit. I think it is probably material as showing the outcome of that preliminary hearing. The fact that the State did dismiss the charges against Mr. Ruff (sic), but the exhibit, for the purposes of the testimony contained therein, I think, is wholly irrelevant and immaterial to this issue here.

"THE COURT: Overruled."

Appellant now claims that the court erred in admitting the transcript of the preliminary hearing because of its *hearsay* nature. At the trial in the court below, appellant's "objection" to the introduction of the transcript took the form of a statement to the court, after the trial judge had marked it as an exhibit, in which he admitted its materiality to show the outcome of the preliminary hearing, conceding its admission for that purpose and said, ". . . but the exhibit, for the purposes of the testimony contained therein, I think, is wholly *irrelevant* and *immaterial* to this issue here. (Emphasis added.)

Obviously, if the transcript was objectionable at all, it was objectionable not because it was irrelevant or immaterial as stated by appellant, but because it contained hearsay. However, he made no objection on that ground at the trial. Under the authorities, it is clear that having failed to object in the court below, he waived his objection on appeal. ■ It is well-settled that an objection to evidence upon the ground that it is incompetent, irrelevant and immaterial is too general to include the objection that it calls for hearsay. In *Keim* v. *D. B. Berelson & Co.*, 105 Cal.App.2d 154, the court stated, at page 162 [233 P.2d 123] : "The objection which appellants made when the question was asked ('incompetent, irrelevant and immaterial') was too broad reasonably to include, and to present to court and counsel, the specific objection that the question called for hearsay. 'It is well settled that when a general objection to the admission of certain evidence is overruled by the trial court, the party against whom the ruling is made cannot raise for the first time on appeal a specific objection thereto, unless the evidence is not admissible for any purpose.''

■ When inadmissible evidence is offered, the opposing party must object and specifically state the grounds of his objection in such a manner that it clearly informs the court of the point on which a ruling is desired and the proponent of the defect to be corrected. ■ An objection specifying the wrong grounds, or a general objection, amounts to a waiver of all grounds not urged. (*Bank of America* v. *Taliaferro,* 144 Cal.App.2d 578 [301 P.2d 393] ; *Keim* v. *D. B. Berelson & Co., supra,* 105 Cal.App.2d 154.)

■ If the transcript was admissible for any purpose, and appellent concedes that it was, it was properly received. However, he urges that if the evidence was admissible for a limited purpose the court should have so instructed the jury, and cites various authorities to the effect that the court had the duty to instruct the jury on the limited effect or purpose of the evidence. With the authorities cited there is no argument, but they also hold that the court's duty does not arise until counsel requests such an instruction, and unless such request is made the right to complain on appeal is waived. (*Hatfield* v. *Levy, Brothers,* 18 Cal.2d 798 [117 P.2d 841] ; *Lewis* v. *Southern Pac. Co.,* 98 Cal.App.2d 358, 362 [220 P.2d 431] ; *Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal.2d 525 [55 P.2d 850].)

The record is clear that appellant did not request, propose or submit to the trial court an instruction on the limited effect

or purpose of the evidence in question. The court need not of its own motion so instruct. Appellant's suggestion that by objecting to the evidence he had in effect requested a limiting instruction is entirely without merit—first, because he has no proper "objection" in the record and, second, because such a contention is completely contrary to the well-established rule that the opponent of offered evidence, even though he properly objects to its introduction, must request the limiting instruction or he waives his right.

█ Appellant's second point on appeal involves the giving of plaintiff's requested jury instructions Numbers 9, 8, 4, 3, 6 and 11. Appellant complains that plaintiff's requested instruction Number 9 which reads, "A person who knowingly testifies falsely at a preliminary hearing in a criminal prosecution may be held liable for malicious prosecution. It is no defense that the person was subpoenaed to testify at such preliminary hearing," is a direction to the jury that if it finds appellant testified falsely at the preliminary hearing, he was as a matter of law liable; and that the law requires more than perjury for malicious prosecution. It is not true, as suggested by appellant, that the sole basic element of an action for malicious prosecution is the initiation of a criminal proceeding, for which he cites Prosser, Torts, 860 (1st ed. 1941). Dean Prosser continues, at page 865 in his text on torts, and on which appellant remains silent: "On the other hand if he advises or assists another person to begin the proceeding, ratifies it when it is begun on his behalf, or takes any active part in directing or aiding the conduct of the case he will be responsible," and makes it clear, at page 866, that knowingly giving false information to the police constitutes advising or assisting another to begin the proceeding.

The evidence in the instant case clearly shows, and the jury so found, that the defendant was not merely a witness at the preliminary hearing but initiated the proceeding by knowingly making a false report to law enforcement officers and that he intentionally and knowingly testified falsely at the preliminary hearing. In addition, the instruction is a corollary of appellant's own proposed instruction Number 15 which was given and reads: "One who merely participates in the original proceeding as a fair witness in the course of litigation is not deemed responsible therefor so as to be required to defend himself in an action for malicious prosecution." Viewing the evidence as a whole and the numerous full and detailed instructions given on malice, lack of probable cause, and defi-

nitions, thereof, it is difficult to see how the jury could have understood the instruction in the manner in which appellant construes it. We find no error in giving plaintiff's proposed instruction Number 9.

Appellant submits that the court erred in giving plaintiff's proposed instruction Number 8 which reads: "A person who gives information to the police which in the normal course of police procedure leads to the arrest and prosecution of the plaintiff, which information is false, may be held liable for malicious prosecution," in that it leaves out the essential element that a person must "knowingly" give false information in order to give rise to a cause of action. As an abstract statement of the law, the word "knowingly" should have been included in the instruction in *Sandoval* v. *Southern Calif. Enterprises, Inc.*, 98 Cal.App.2d 240 [219 P.2d 928]; however, an examination of the record in the instant case discloses that the failure to include it in instruction Number 8 was not prejudical error. The issue of knowledge, as such, was not involved and we do not believe that prejudice resulted from this error or that any different result was probable had it not been committed. (Cal. Const., art. VI, § 4½; Code Civ. Proc., § 475.) The question of appellant's "knowledge" of the falsity of his report to police was not and could not, under the evidence, have been an issue in the case for the reason that plaintiff claimed defendant gave him the watch and then reported it to the police to have been lost or stolen; whereas defendant claimed he did not give the watch to plaintiff and that the report he made to police was true. The theory of the appellant's defense in the court below did not at any time include the issue of knowledge. Although the instruction as given may have been erroneous as an abstract statement of law, as applied to the whole evidence and the issues at bar, it is clear that no prejudice resulted. (*Smith* v. *Southern Pac. Co.*, 138 Cal.App.2d 459 [292 P.2d 66].) In *Adams* v. *American President Lines*, 23 Cal.2d 681, at page 688 [146 P.2d 1], the court stated: ". . . while an instruction gives the law of the case to the jury, its applicability and correctness cannot be divorced from the evidence in the case. The courts will not consider an instruction as merely an abstract statement of legal principles. (Citations.) It must be measured by the circumstances of the case in which it was given."

Appellant urges that plaintiff's proposed instruction Number 4, although an appropriate test of liability in an action for negligence, is improper in a malicious prosecution

case and that plaintiff's requested instruction Number 3 reiterated the defect. Number 4 reads: "The general rule of law is that whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately brought about by its intervening agents, provided such agents were set in motion by the primary wrongdoer, or provided those acts causing the damage were the necessary or legal and natural consequences of the wrongful act. In this regard you are instructed that it is illegal to make a false report to a police officer." Number 3 reads: "You are instructed that one who sets the law in motion by making a false statement to police is liable for malicious prosecution, even though he did not sign the criminal complaint. Thus, if you find that the defendant William Summerfield made a false statement to the police concerning the disappearance of his watch, it will be no defense for the defendant Summerfield that he did not sign the criminal complaint against the plaintiff."

That portion of instruction Number 4 objected to by appellant appears to have been taken from the rule laid down in the case of *Ray Wong* v. *Earle C. Anthony, Inc.,* 199 Cal. 15 [247 P. 894], a malicious prosecution action. Appellant again raises the question of knowledge of the falsity of the information, but again the entire theory of appellant's defense did not include the issue of knowledge. His own testimony at the trial was that he gave truthful information to the police and there is not a shred of evidence that he unknowingly gave false information, nor has such a claim ever been made. Instruction Number 3 merely states the rule that a person may be liable for malicious prosecution if he sets the law in motion even though he did not sign the criminal complaint. (*Centers* v. *Dollar Markets,* 99 Cal.App.2d 534 [222 P.2d 136] ; *Blancett* v. *Burr,* 100 Cal.App. 61 [279 P. 668] ; *Bernstein* v. *Maimes,* 126 Cal.App.2d 468 [272 P.2d 529] ; *Siffert* v. *McDowell,* 103 Cal.App.2d 373 [229 P.2d 388].) Appellant complains that the instruction does not consider that a person making a false report to the police may have done so in good faith. This was adequately covered in appellant's own proposed instruction Number 6 which was given and which reads: "A person who has reasonable ground for belief that another person committed crime, and in good faith charges commission of such crime, cannot be held liable in a malicious prosecution action notwithstanding that such other person proves at the trial of

the criminal action that he is innocent, or that no crime in fact was committed.''

In complaining of plaintiff's proposed instruction Number 6 that ''One who knowingly presses a baseless criminal charge acts without probable cause and is guilty of malice as a matter of law'' and which is a principle of law well settled in *White* v. *Brinkman,* 23 Cal.App.2d 307 [73 P.2d 254], he does not urge that the instruction does not correctly state the law, but that there is no evidence in the case that defendant pressed this criminal charge. There is ample evidence in the record that defendant made a false report to the police that his watch had been lost or stolen after he gave it to the plaintiff, and then subsequently assisted in the prosecution of plaintiff, first, by not advising law enforcement officers of the truth and, second, by testifying falsely at the preliminary hearing.

Plaintiff's proposed instruction Number 11 reads as follows: ''The basis of an action for malicious prosecution is the protection of the individual from the damages caused by unjustifiable criminal prosecution. In assessing damages in a case such as this, if you should find that the plaintiff is entitled to damages, you should award the plaintiff any money which he has lost as a result of the prosecution, including his loss of earnings, the attorney's fees he has incurred, and the monetary value of any property which he has lost as a result of the prosecution.

''In addition, you may award the plaintiff monetary damages to compensate him for the loss of time which he has sustained as the result of the prosecution, the deprivation of his liberty, the injury to his reputation or character, the injury to his credit, and the mental suffering and anguish which he has sustained as a result of the prosecution. In this case, the plaintiff has prayed for exemplary or punitive damages, and you are instructed that in an action such as this where the defendant has been guilty of oppression, fraud or express or implied malice, the plaintiff may recover in addition to the actual damages which he has sustained damages for the sake of example and by way of punishing the defendant.''

Appellant contends that this instruction constitutes a direction to the jury that oppression, fraud or malice existed; and that it authorized the jury to award plaintiff damages for loss of earnings and loss of time which are one and the same.

First of all, this instruction dealt exclusively with the subject of damages and in reading it with the others given by the trial court, it is obvious that the jury was instructed that

it could award damages only if it found plaintiff was entitled to a verdict. To even consider this instruction, it was necessary for the jury to first find that malice existed. The court made it clear in other instructions given before those on damages that malice was a question of fact and set out in detail what elements plaintiff had to prove before a verdict could be rendered in his favor. Under the circumstances, it is difficult to see how the jury could believe that the issue of malice had been taken from it. Appellant's construction of the instruction is a strained one and wholly unreasonable.

 This court will adopt the construction of an instruction which will support rather than defeat the judgment if it is reasonably susceptible to such interpretation. *Mullanix* v. *Basich,* 67 Cal.App.2d 675 [155 P.2d 130] ; *Smith* v. *Southern Pac. Co.,* 138 Cal.App.2d 459 [292 P.2d 66].

 There is no merit to appellant's second point that in allowing a person both the value of his time and loss of earnings is to permit a duplication of damages. In setting out special damages, the instruction mentioned earnings lost during incarceration. In the next paragraph authorizing general damages, by the use of the phrase, ''loss of time,'' it is obvious it does not mean ''loss of earnings.'' It only directed the jury to place a monetary value upon the time lost away from plaintiff's normal pursuits in addition to money lost in the form of salary or wages. It is a clear distinction between special and general damages.

Most of the appellant's alleged errors related to instructions, and in each instance he has taken the instruction in question out of context and quoted a portion therefrom without reference to others given. Instructions must be considered as a whole. Examining the instructions as a whole, which the law requires (*Gordon* v. *Aztec Brewing Co.,* 33 Cal.2d 514 [203 P.2d 522], *Shook* v. *Beals,* 96 Cal.App.2d 963 [217 P.2d 56, 18 A.L.R.2d 919], and *Yazzolini* v. *Jones,* 153 Cal.App. 2d 626 [315 P.2d 107]), it is clear that the jury was not misled into returning a verdict upon erroneous principles of law. The record itself is so clear on the factual issues that it is obvious that no miscarriage of justice under article VI, section 4½ of the state Constitution resulted.

Judgment affirmed.

White, P. J., and Fourt, J., concurred.