**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KUI Z. MYLES, *Plaintiff-Appellant*, v. UNITED STATES OF AMERICA; DAVID MARIN; BRIAN DEMORE; FRANCIS M. JACKSON; ARACELI TREVINO; DAVID GASSMANN; TROY THOMPSON; STEVEN LOVETT, *Defendants-Appellees.* | No. 20-55910 D.C. No. 5:19-cv-02036-PSG-KK OPINION |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted December 10, 2021
Pasadena, California

Filed September 2, 2022

Before: Marsha S. Berzon and Carlos T. Bea, Circuit
Judges, and Richard D. Bennett,[*] District Judge.

Opinion by Judge Berzon

---

[*] The Honorable Richard D. Bennett, United States District Judge
for the District of Maryland, sitting by designation.

**SUMMARY**[**]

**Federal Tort Claims Act**

The panel reversed the district court's dismissal—under a discretionary function immunity ruling under the Federal Tort Claims Act ("FTCA")—of a federal employee plaintiff's malicious prosecution claim against the United States and individual officials.

Plaintiff works as an Immigration and Customs Enforcement ("ICE") agent. In 2013, she reported to ICE that she was experiencing workplace harassment, and she alleged that Department of Homeland Security ("DHS") agents responded by inventing baseless criminal wage theft charges against her. The district court dismissed plaintiff's complaint. With respect to plaintiff's malicious prosecution claim, the district court dismissed based on its holding that it lacked subject matter jurisdiction over the claim under the FTCA's discretionary function exception.

The panel held that the district court erred in dismissing plaintiff's malicious prosecution claim because the discretionary function exception under the FTCA did not apply to law enforcement investigations when a federal employee's tactics during the investigation had no legitimate policy rationale.

In the FTCA, the federal government waived its sovereign immunity with respect to certain tort claims arising out of wrongdoing committed by federal employees

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

acting within the scope of their employment. Sovereign immunity waiver is subject to several exceptions, including the discretionary function exception, wherein the federal government has retained sovereign immunity for claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the" federal government. 28 U.S.C. § 2680(a).

To determine whether a claim falls within the scope of the discretionary function, the court conducts a two-step inquiry. First, the court assesses whether the allegedly wrongful conduct is discretionary. If so, the court determines whether the exercise of discretion is a decision "grounded in social, economic, and political policy." *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988).

Preliminarily, the panel identified plaintiff's specific allegations of agency wrongdoing. Plaintiff alleged, among other things, that DHS officials misrepresented to the Orange County District Attorney's Office ("OCDA") that plaintiff had "purposefully lied about overtime hours" in a manner that constituted "grand theft by an employee" under Cal. Penal Code § 487(b)(3), even though they knew that she had not lied about her overtime hours. She also alleged that DHS officials doctored evidence that she was submitting false overtime requests.

The district court decided at step one of the analysis that the DHS agents acted within their discretion when they investigated plaintiff for workplace misconduct and reported that conduct to the OCDA. The panel assumed without deciding that the district court's step one analysis was correct. The panel did not agree with the district court's reasoning at step two. The panel held that the discretionary

function exception did not provide refuge for conduct such as knowingly lying under oath, tampering with witnesses, or fabricating evidence. Such conduct of the type alleged by plaintiff had no role in the legitimate functioning of government and did not constitute a policy judgment susceptible to social, economic, or political analysis. The conduct, therefore, was not protected by the discretionary function exception.

The panel rejected the government's argument that plaintiff had not carried her burden under *Twombly* and *Iqbal*'s pleading standards, as she had failed to sufficiently allege malice or lack of probable cause on the part of DHS officials. The panel held that, at this stage of the proceedings, in which all uncontroverted factual allegations in the complaint must be taken as true and all factual disputes resolved in plaintiff's favor, plaintiff alleged sufficient facts to plausibly support her malicious prosecution claim. Specifically, plaintiff alleged facts that satisfied the three elements of a malicious prosecution action in California: the state criminal proceeding against plaintiff was commenced by or at the direction of federal agents and terminated in plaintiff's favor, was brought without probable cause; and was initiated with malice.

The panel remanded for further proceedings. The panel addressed additional issues in a concurrently filed memorandum disposition.

**COUNSEL**

David Zarmi (argued), Beverly Hills, California, for Plaintiff-Appellant.

Hillary M. Burrelle (argued), Assistant United States Attorney; David M. Harris, Chief, Civil Division; Tracy L. Wilkison, Acting United States Attorney; United States Attorney's Office, Los Angeles, California; for Defendants-Appellees.

**OPINION**

BERZON, Circuit Judge:

After she was discharged from her position as an Immigration and Customs Enforcement ("ICE") agent, plaintiff Kui Z. Myles brought national origin discrimination and retaliation charges before the Equal Employment Opportunity Commission ("EEOC"). Following a multi-day trial, the EEOC upheld the charges and ordered that Myles be reinstated with backpay. Myles then worked at ICE for several years without incident. In 2013, however, she reported to ICE that she was again experiencing harassment. In response, she alleges, Department of Homeland Security ("DHS") agents—including ICE officers, DHS special agents, and other high-ranking DHS officials—invented baseless criminal wage theft charges against her.

The district court dismissed Myles's complaint—which raised, among other things, a malicious prosecution claim—on grounds of untimeliness, lack of administrative exhaustion, and discretionary function immunity. We address the first two issues in a concurrently filed

memorandum disposition. In this opinion, we reverse the district court's discretionary function immunity ruling and remand Myles's malicious prosecution claim for further proceedings.

## I.

## A.

Myles is a naturalized United States citizen born in China.[1] In 2005, she applied for and accepted a position as an Immigration Enforcement Agent at ICE, an agency within DHS. Before beginning her official work duties, Myles attended a mandatory federal training program. During the program, she was subjected to a hostile work environment by her co-workers and instructors on account of her Chinese national origin. *Myles v. Napolitano*, No. HS-06-ICE-000682, 2012 WL 1564475, at *1 (EEOC Apr. 20, 2012). After raising concerns about this treatment, Myles was denied access to certain computer systems, was not issued pepper spray, was not permitted to work in the field, was denied bus driving training, was erroneously charged with "absence without leave," and was ultimately terminated. *Id.* at *1–2. After a multi-day trial, Administrative Law Judge ("ALJ") Kathleen Mulligan found DHS liable for discriminatory and retaliatory conduct against Myles based on her Chinese national origin, and ordered Myles reinstated with an award of back pay and benefits, compensatory damages, compensation for emotional distress, and attorneys' fees and costs.

---

[1] As we are reviewing the district court's decision to grant the Defendants' motions to dismiss, "we recite the facts as alleged in [Myles's] complaint, and assume them to be true." *Brooks v. Clark County*, 828 F.3d 910, 914 n.1 (9th Cir. 2016).

Following her reinstatement, Myles consistently received "[e]xcellent" and "[o]utstanding" performance evaluations. But, after several years of uneventful service, Myles reported to ICE that she was again experiencing harassment, this time at the hands of her direct supervisor Armando Lares. As a result, Lares was subject to disciplinary action, including "being placed on administrative duty status" and temporarily losing overtime privileges and the "right to carry a firearm."

About one month after Lares' disciplinary action went into effect, he falsely reported to DHS that Myles was illegally housing undocumented Chinese nationals. A team of at least five DHS agents—including David Gassmann and Steven Lovett, both defendants in this case—surveilled Myles for eight months, taking extensive video footage of Myles and her family. When the surveillance revealed that Myles was not illegally housing any undocumented individuals, Gassmann was encouraged by Lovett and other DHS officers, including defendants Brian DeMore, Francis Jackson, and David Marin, to manufacture evidence that would support a criminal case against Myles for wage theft and presented the manufactured evidence to federal law enforcement officials.

Upon review of the evidence the DHS officials had marshalled against Myles, the United States Attorney's Office refused to press charges. According to Myles's complaint, the Office concluded that the evidence appeared to be "fabricated" and observed that "the matter [was] an employment issue and not a criminal one." Undeterred, Gassmann presented the case to the Orange County District Attorney's Office ("OCDA"); his presentation included knowingly false statements and intentional misrepresentations. The OCDA then filed a criminal

complaint against Myles in California state court, alleging one count of grand theft by an employee under California Penal Code § 487(b)(3).

In December 2014, Gassmann and another DHS agent asked Myles to meet with them "for a talk." When she arrived, they arrested her and transported her to the Santa Ana jail, where she was booked and detained. In connection with the arrest, the OCDA released several press statements "in which false statements were published about [Myles] stating she acted illegally, took advantage of her public position, and was unethical." About one month later, Jackson, Deputy Field Officer for ICE, recommended that Myles be either suspended indefinitely without pay or terminated. Marin, an ICE Deputy Field Officer, subsequently placed Myles on indefinite suspension without pay, a status that continued until late November 2017.

The state criminal case against Myles was pending for almost three years. During that period, DHS agents tampered with witnesses and committed perjury and obstruction. Myles "underwent significant financial hardship" including selling her property, exhausting her savings, and withdrawing retirement funds to support her family and to pay for her defense. She experienced "significant emotional and physical distress, humiliation, shame, despair, embarrassment, depression, physical and mental pain and suffering and anguish, loss of earnings, loss [of] pay grade, loss of security clearance at her job, loss of the right to carry service-issued and personal firearms as a law enforcement officer, loss of status[] and future status, and loss of other benefits."

OCDA Deputy District Attorney Nichols, who was assigned to prosecute the state criminal case, "became convinced" upon reviewing the evidence—including the

2008 EEOC decision; a Government Accountability Office report detailing widespread defects in overtime oversight within DHS; and video footage demonstrating that Myles was "working longer hours than many of her counterparts" and that the individual clocking out early was not Myles— that the criminal case against Myles "was without merit and filed in bad faith." On November 13, 2017, Nichols moved to dismiss the criminal case because "she had come to the conclusions that [Myles] was being unlawfully discriminated against"; that Myles was innocent of any wrongdoing; that some of the evidence against Myles had been fabricated; and that DHS was "abusing the office of the OCDA" by using it as a tool "to unfairly prosecut[e]" Myles. The state court granted Nichols's motion and the case was dismissed.

Myles returned to active duty the following week, but she continues "to suffer harm . . . including but not limited to [DHS] failing to restore her los[t] earnings and benefits, pay grade, security clearance, and the right to carry service-issued and personal firearms." She has also been relegated "to low level administrative status and light duty," without opportunity for advancement. DHS payroll employees have also "planted" new false evidence that Myles requested and received improper overtime payments from 2014 through the date on which she filed this action, including during the three-year period in which she was not working at DHS because of the state criminal case.

**B.**

In November 2018, Myles filed an administrative complaint with DHS, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675, regarding the alleged mistreatment she experienced from the time she submitted an internal complaint within DHS in 2014 to the time she

was reinstated in 2017. DHS never responded to the administrative complaint, so it was denied by operation of law. 28 U.S.C. § 2675(a). A few months later, Myles filed this case in the Central District of California. The government moved to dismiss the complaint. The district court granted the government's motion, but also granted Myles leave to amend her first cause of action—malicious prosecution—because it could be "save[d] . . . via amendment." Myles then filed a First Amended Complaint ("FAC"), and, later, a Second Amended Complaint ("SAC").

The SAC asserts the following causes of action: (1) malicious prosecution against the government; (2) abuse of process against the government; (3) negligence against the government; (4) intentional infliction of emotional distress ("IIED") against the government; (5) violation of the First Amendment against DeMore, Gassmann, Jackson, Lovett, and Marin ("the Individual Defendants"); (6) violation of the Second Amendment against Marin; (7) violation of the Fifth Amendment against the Individual Defendants; (8) violation of the Fourteenth Amendment against the Individual Defendants; (9) conspiracy to interfere with civil rights under 42 U.S.C. § 1895 against the Individual Defendants; and (10) violation of civil rights under 42 U.S.C. § 1986 against the Individual Defendants.

The government and each of the Individual Defendants moved to dismiss the case in its entirety, and the district court granted the motions. With respect to Myles's malicious prosecution claim, the district court held that it lacked subject matter jurisdiction over the claim because of discretionary function immunity. It further rejected Myles's argument that the government actions at issue qualify as constitutional violations outside the scope of the

discretionary function exception, as any constitutional claims would be "barred due to the statute of limitations or qualified immunity."

The district court then dismissed Myles's Fourteenth Amendment *Bivens* claim on the ground that she had stipulated to such a dismissal; dismissed her Second Amendment *Bivens* claim against Marin on the ground that Marin was shielded from suit by qualified immunity;[2] and dismissed her remaining claims on the grounds that she failed to administratively exhaust them or they were time-barred. Finally, the district court denied Myles's motion for leave to amend the complaint.

## II.

As mentioned, this opinion discusses only Myles's malicious prosecution claim. We review de novo the district court's decision to grant a motion to dismiss under the FTCA's discretionary function exception. *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008). "In reviewing the district court's dismissal, we must accept as true the factual allegations in the complaint." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1173 (9th Cir. 2002).

We conclude that the district court erred in dismissing Myles's malicious prosecution claim. Discretionary function immunity under the FTCA does not apply to "law enforcement investigations when a federal employee's tactics during an investigation had 'no legitimate policy rationale.'" *Nieves Martinez v. United States*, 997 F.3d 867,

---

[2] Myles does not contest the district court's Second Amendment ruling on appeal.

881 (9th Cir. 2021) (quoting *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996)).

## A.

Myles's malicious prosecution claim was brought against the federal government.  As a sovereign, the United States "is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  In the FTCA, the federal government waived its sovereign immunity with respect to certain tort claims arising out of wrongdoing committed by federal employees acting within the scope of their employment.  *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008) (citing 28 U.S.C. § 1346(b)(1)).

The sovereign immunity waiver in the FTCA is subject to several exceptions, one of which is pertinent here:  the federal government has retained sovereign immunity for claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the" federal government.  28 U.S.C. § 2680(a).  To determine whether a claim falls within the scope of the discretionary function exception, we conduct a two-step inquiry. *Young v. United States*, 769 F.3d 1047, 1053 (9th Cir. 2014).  First, we assess whether the allegedly wrongful "conduct is discretionary—that is, 'whether the action is a matter of choice for the acting employee.'"  *Id.* (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).  If so, we "determine whether the particular exercise of discretion" at issue is "of the kind that the discretionary function exception was designed to shield," in that it is a decision "grounded in social, economic, and political policy."  *Id.* (quoting *Berkovitz*, 486 U.S. at 536–37 (1988)).  Under Ninth Circuit law, the second step does not require a showing that the

decision was "actually grounded in policy considerations," but the decision "must be, by its nature, susceptible to policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998); *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015); *but see id.* at 1114 (Berzon, J., concurring) (concluding that the conduct at issue must be *actually grounded* in a policy analysis, as the statement in *United States v. Gaubert*, 499 U.S. 315, 324–25 (1991), regarding "susceptibility to policy analysis," relied upon in *Miller* and *Chadd*, establishes only a rebuttable presumption that the conduct was grounded in such an analysis).

"Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *GATX/Airlog Co.*, 286 F.3d at 1174. So, before undertaking an assessment at step one of the *Berkovitz-Gaubert* test, "we must first identify [Myles's] 'specific allegations of agency wrongdoing.'" *Young*, 769 F.3d at 1053–54 (quoting *Berkovitz*, 486 U.S. at 540).

Here, Myles alleges that federal government employees "knowingly made false allegations to the OCDA regarding [Myles's] conduct . . . that directly led to her criminal prosecution"; "instigated, encouraged, and were actively involved in causing [Myles] to be prosecuted . . . on the felony charge of grand theft"; and "committed perjury by lying under oath about the charge against [Myles]." She further alleges that, to ensure the criminal case against her would be maintained, DHS officials tampered with witnesses, provided false statements to the OCDA, and fabricated evidence. Myles also alleges that the DHS officials "did not have probable cause nor did they reasonably believe that [Myles] was guilty of the charge against her." "Their purpose was to retaliate against

[Myles]" because she had reported internally that she was again experiencing national origin-based harassment in the workplace.

Getting into specifics, Myles alleges that DHS officials represented to the OCDA that she had "purposefully lied about overtime hours" in a manner that constituted "grand theft by an employee" under California Penal Code § 487(b)(3), even though they knew that she had not lied about her overtime hours. Video evidence, Myles alleges, demonstrated that she was "working longer hours than many of her counterparts" and "the person in the video who . . . was clocking out early was not, in fact," Myles. She also alleges that DHS officials doctored evidence that she was submitting false overtime requests, including during a period in which she could not have submitted such requests because she was absent from the office on unpaid administrative leave.

**B.**

The district court concluded that it lacked subject matter jurisdiction over Myles's malicious prosecution claim in light of the discretionary function exception. At step one of the inquiry, the district court concluded that the DHS agents "acted within their discretion when they investigated [Myles] for workplace misconduct and reported that conduct to the OCDA." At step two, the district court reasoned that the conduct of the DHS agents was "of the type the exception seeks to protect," as "the decision how to investigate, who to investigate, and how to present evidence to the proper authorities are classic examples of discretionary conduct."

Assuming without deciding that the district court's step one analysis was correct, we cannot agree with the district court's reasoning at step two. The discretionary function

exception was designed to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *Gaubert*, 499 U.S. at 323 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). As decisions to knowingly lie under oath, tamper with witnesses, or fabricate evidence cannot be "grounded in" and are not "susceptible to" such analyses, *id.* at 323, 325, the discretionary function exception does not provide refuge for such conduct. Put differently, the discretionary function exception "does not apply to law enforcement investigations when a federal employee's tactics during an investigation had 'no legitimate policy rationale.'" *Nieves Martinez*, 997 F.3d at 881 (quoting *Sabow*, 93 F.3d at 1454). Conduct of the type alleged by Myles has no role to play in the legitimate functioning of government. Such conduct therefore is not protected by the discretionary function exception. As the Seventh Circuit emphasized in an analogous case, "[t]here can be no argument that perjury is the sort of 'legislative [or] administrative decision[] grounded in social, economic, or political policy' that Congress sought to shield with the discretionary function exception." *Reynolds v. United States*, 549 F.3d 1108, 1112–14 (7th Cir. 2008) (quoting *Varig Airlines*, 467 U.S. at 814).

Our interpretation of the discretionary function exception is supported by the 1973 amendment to the list, in 28 U.S.C § 2680(h), of intentional torts exempted from the FTCA.[3] *See* 119 Cong. Rec. 38969 (1973). Historically, the

---

[3] As amended, section 2680(h) provides that the federal government has retained sovereign immunity with respect to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit,

United States retained sovereign immunity for intentional torts committed by government agents, including malicious prosecution.  *Id.*  But, following a string of botched drug raids in Collinsville, Illinois that captured national media attention, Congress amended 28 U.S.C. § 2680(h) to allow aggrieved persons to bring "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" actions against the federal government arising from the "acts or omissions of investigative or law enforcement officers."  28 U.S.C. § 2680(h).[4]  Congress's goal in passing the 1973 amendment was to deter the designated federal agents from committing intentional torts

---

or interference with contract rights," except that, "with regard to acts or omissions of investigative or law enforcement officers of the United States Government" that give rise to tort claims for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution," the federal government has waived its sovereign immunity.  28 U.S.C. § 2680(h).  The provision defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  *Id.*

Myles's complaint expressly asserts that the ICE and DHS officials in this case qualify as "investigative and law enforcement agents of the United States" such that the "United States Government is liable for all damages caused" by their acts and omissions.  The government has not contended otherwise.

[4] 119. Cong. Rec. 38969; *see also* S. Rep. No. 93-588, at 3–4 (1973); Andrew H. Malcolm, *Drug Raids Terrorize Two Families—By Mistake*, N.Y. Times, April 29, 1973; Andrew H. Malcolm, *Two Families Say Lives Changed After Raids by Drug Agents*, N.Y. Times, May 19, 1973; Andrew H. Malcolm, *Harassed Victims of Drug Raids Are Moving*, N.Y. Times, July 4, 1973; Jake McCarthy, *The Victims Are Hiding*, St. Louis Post, Oct. 31, 1973; Paul Galloway, *Trying the Drug Raiders: 10 Agents Found Innocent in Botched Collinsville Entries*, Wash. Post, April 7, 1974.

and to ensure that victims of intentional torts would be adequately compensated for their injuries. 119. Cong. Rec. 38969.

As section 2680(h) broadened the application of the FTCA with respect to malicious prosecution actions arising out of the acts or omissions of federal investigative and law enforcement personnel but did not change the discretionary function exception, the two should not be read as coextensive. Yet, if the facts of this case—which, again, involve allegations of perjury, witness tampering, and fabrication of evidence—are insufficient to render Myles's malicious prosecution claim outside the scope of the discretionary function exception, it is hard to imagine any malicious prosecution action covered by the section 2680(h) carve-out that would survive application of the discretionary function exception. Any malicious prosecution action against investigative and law enforcement personnel would involve "decision[s] how to investigate, who to investigate, and how to present evidence to the proper authorities." The district court's interpretation of the discretionary function exception would thereby render the 1973 addition to section 2680(h) meaningless, in contravention of the "well-established principle of statutory construction that 'legislative enactments should not be construed to render their provisions mere surplusage.'" *Am. Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) (quoting *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997)).

In sum, we conclude that in malicious prosecution cases in which the plaintiff alleges that an investigative or law enforcement official fabricated evidence, tampered with witnesses, lied under oath, or otherwise knowingly offered false testimony to induce criminal charges against the

plaintiff, the discretionary function exception does not shield the United States government from liability, as such misconduct does not constitute a policy judgment susceptible to social, economic, or political analysis.[5]

## C.

In its briefing before this Court, the government advanced a new argument: that Myles has not carried her burden under *Twombly* and *Iqbal*'s pleading standards, as she has failed sufficiently to allege malice or lack of probable cause on the part of the DHS officials.  *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Not so.  At this stage of the proceeding—in which all uncontroverted factual allegations in the complaint must be taken as true and all factual disputes must be resolved in Myles's favor, *see Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017)—Myles has alleged sufficient facts plausibly to support her malicious prosecution claim.  *See Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 655 (9th Cir. 1994) (citing *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss, & Karma, Inc.*, 42 Cal. 3d 1157 (1986)).

A malicious prosecution action, in California, has three elements: (1) the prosecution "was commenced by or at the direction of the defendant and was pursued to a legal termination" in the plaintiff's favor; (2) "was brought without probable cause"; and (3) "was initiated with malice."  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336,

---

[5] In light of this holding, we need not reach Myles's alternative argument that the discretionary function exception does not apply to this case because the misconduct at issue qualifies as a constitutional violation.

341 (2004). Malice in this context "is not limited to actual hostility or ill will toward [the] plaintiff," but also "exists when proceedings are instituted primarily for an improper purpose" such as when "the person initiating [the charges] does not believe that his claim may be held valid." *Albertson v. Raboff*, 46 Cal. 2d 375, 383 (1956).

With respect to the first element, the government does not contest that the state criminal proceeding against Myles was "commenced by or at the direction of" its agents. Nor does the government argue on appeal that the dismissal of the state criminal case did not constitute a legal termination in Myles's favor. It could not plausibly so maintain, as Myles's complaint states that the state prosecutor asked the court to dismiss the case because she "agreed with Ms. Myles . . . that the charge was concocted by Agency officials in bad faith and was ultimately meritless." More specifically, the state prosecutor "became convinced . . . that the Agency's purported evidence against Ms. Myles was fabricated" and that the legitimate evidence "in fact established Ms. Myles' innocence." Such allegations satisfy Myles's burden on the "favorable termination" malicious prosecution element, as precedent establishes that if the dismissal of a criminal charge "is of such a nature to indicate the innocence of the accused, it is a favorable termination." *Jaffe v. Stone*, 18 Cal. 2d 146, 150 (1941).

Turning to the other two elements of a malicious prosecution action—malice and lack of probable cause: Myles alleges that federal law enforcement personnel "knowingly made false allegations" that Myles was guilty of felony grand theft; "instigated, encouraged, and were actively involved in causing [Myles] to be prosecuted" for felony grand theft for over three years; and "committed perjury by lying under oath about the charge against [Myles]

. . . under pressure and directive by Agency management." Similar charges had not been pursued by the U.S. Attorney's Office in part because the evidence appeared fabricated. The defendants "did not have probable cause nor did they reasonably believe that [Myles] was guilty of the charge against her" as they "knew when they approached the OCDA about filing the state criminal action that [Myles] was factually innocent of the charge." Myles further alleges that the purpose of these agents was "to retaliate against [Myles]" for internally reporting that she was again experiencing national origin-based harassment, and "to intimidate, harass and embarrass [Myles] in order to remove her from her position."

These allegations satisfy the lack of probable cause and malice elements of malicious prosecution under California law. In *Rupp v. Summerfield*, 161 Cal. App. 2d 657 (1958), for example, the defendant gave the plaintiff an $800 watch as a birthday gift, then reported the watch stolen so that he could fraudulently collect money from his insurance company. *Id.* at 660. Later, after the plaintiff sold the watch to a pawn shop, a warrant was issued for the plaintiff's arrest. *Id.* at 661. The defendant did nothing to help the plaintiff during the six weeks in which the plaintiff was held in custody leading up to a municipal court preliminary hearing. *Id.* Worse, at the hearing, the defendant testified that he never gave the watch to the plaintiff. *Id.* The California Court of Appeal affirmed the jury's conclusion that the defendant was liable for malicious prosecution. *Id.* at 663–67. In the course of so holding, the court expressly noted that "[o]ne who knowingly presses a baseless criminal charge acts without probable cause and is guilty of malice as a matter of law." *Id.* at 666.

In sum, Myles's allegations are without doubt sufficient to meet her burden to "state a claim to relief that is plausible on its face," meaning there is "more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *Nayab v. Cap. One Bank*, 942 F.3d 480, 495–96 (9th Cir. 2019); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). Myles's factual assertions—including her allegations about the dropped federal investigation, the failed investigation regarding whether Myles was illegally housing undocumented Chinese nationals, the plausible motive traceable to Lares' discipline, the video evidence demonstrating that Myles was not the individual clocking out early, and the representations that Myles was submitting false wage reports during the period in which she was on unpaid leave—are sufficiently detailed to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" in the complaint. *Id.*

## CONCLUSION

For the reasons stated above, we **REVERSE** the district court's dismissal of Myles's malicious prosecution claim and **REMAND** for further proceedings consistent with this opinion.